RENDERED: AUGUST 16, 2018
TO BE PUBLISHED

# Supreme Court of Kentucky FINAL

2017-SC-000289-MR

DATE 9/6/18 Kim Redmon, DC

TREVOR BROWN, JR.                      APPELLANT

V.             ON APPEAL FROM HARDIN CIRCUIT COURT
HONORABLE KEN HOWARD, JUDGE
NO. 16-CR-00117

COMMONWEALTH OF KENTUCKY            APPELLEE

## OPINION OF THE COURT BY CHIEF JUSTICE MINTON

### AFFIRMING

A Hardin Circuit Court jury convicted Trevor Brown Jr. of complicity to the kidnapping, complicity to the attempted murder, and complicity to the first-degree robbery of Dealynn O'Connor. Following the jury's recommendation, the trial court entered judgment sentencing Brown to a total of 40 years' imprisonment. Brown now appeals from the judgment as a matter of right,[1] raising five issues for review. Finding no reversible error, we affirm the judgment.

---

[1] Ky. Const. § 110(2)(b).

# I. BACKGROUND.

Several people, including Brown and O'Connor, came and went over the span of two days from a trailer in Hardin County, Kentucky. The events that come about during that get-together ended in criminal charges and separate grand jury indictments against five people, including Brown, who was charged with complicity to the kidnapping, complicity to the attempted murder, and complicity to the first-degree robbery of O'Connor. Three of the five pleaded guilty before trial and testified against Brown and a co-defendant, Marc Daniel McCoy,[2] in a joint jury trial after which both co-defendants were convicted.

A concise summary of the facts giving rise to the charges against Brown is nearly impossible to relate because of the many actors involved and the variations in stories. Testimony at trial revealed that an argument arose at the Hardin County trailer between O'Connor and one or more of her assailants. One or more of the assailants beat O'Connor badly, took a sizable amount of money from her purse, and threw her into the bathroom.

One of the assailants then telephoned Brown, described what had happened to O'Connor, and asked him for help. Brown responded by coming to the trailer, where he and another assailant removed O'Connor—who was bound and gagged, wrapped in a bedsheet, and hooded with a pillowcase over her head—and put her into her automobile.

---

[2] By separate opinion rendered today, we affirm the judgment of conviction and sentence of Brown's co-defendant. *McCoy v. Commonwealth*, 2018-SC-000261-MR (Ky. 2018).

Testimony also revealed that, at this point, Brown possessed a paper towel containing jewelry taken from O'Connor. Brown, McCoy, and O'Connor drove to a bridge spanning the Ohio River in neighboring Meade County, Kentucky. Upon arriving at the bridge, Brown exited the vehicle with the victim, stabbed her three times, and fled the scene.

## II. ANALYSIS.

### A. The trial court did not err in denying Brown's motion for directed verdict on his kidnapping charge.

Brown first argues that the trial court erred when it denied his motion for a directed verdict on the Complicity to Kidnapping. Specifically, Brown argues that the prosecutor did not prove that O'Connor suffered a *serious physical injury*, one of the elements necessary for a Class A felony conviction for Kidnapping under Kentucky Revised Statutes ("KRS") 509.040(2). That this issue is preserved is undisputed.

KRS 509.040(2) enhances Complicity to Kidnapping to a Class A felony if "the victim has suffered serious physical injury during the kidnapping." KRS 500.080(15) defines *serious physical injury* as "physical injury which creates a substantial risk of death, or which causes serious and prolonged disfigurement, prolonged impairment of health, or prolonged loss or impairment of the function of any bodily organ."

The jury found Brown guilty of Complicity to Kidnapping in addition to finding that O'Connor suffered a serious physical injury in the course of the kidnapping. We note at the outset of our analysis that O'Connor died in an

unrelated incident before this came to trial, so she could not provide testimony describing her injuries. In fact, the only evidence at trial about O'Connor's injuries amounted to the knowledge that she was stabbed, pictures showing the injury, and medical testimony provided by an expert witness testifying solely based on medical records.

It is difficult to say that O'Connor's injuries here qualify under the serious and prolonged disfigurement, prolonged impairment of health, or prolonged loss or impairment of the function of any bodily organ prongs. In fact, the Commonwealth does not attempt to argue satisfaction of these prongs of the *serious physical injury* test. This dispute then comes down to whether it was clearly unreasonable for a jury to believe that, based on the evidence adduced at trial, O'Connor suffered a "physical injury which creates a substantial risk of death."

The evidence at trial was that Brown stabbed O'Connor three times. As a result of the stabbing, O'Connor suffered a punctured lung, creating a hole in the lung and causing a pneumothorax, also known as a collapsed lung. Because of this injury, O'Connor received treatment at a level one trauma hospital. She was hospitalized for three days, had a tube inserted into her torso, and remained hospitalized until she went a full day without her lung collapsing upon removal of the chest tube. Medical testimony at trial revealed that a pneumothorax, if untreated, can lead to respiratory arrest. The testifying doctor also stated that any pneumothorax can become a "tension pneumothorax," which occurs when air becomes trapped in the chest wall and

4

pushes the heart to the opposite side of the body. The doctor testified that this situation is "an absolute surgical emergency. People will die." The doctor testified that in O'Connor's case, the pneumothorax was caught quickly.

"On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilty, only then the defendant is entitled to a directed verdict of acquittal."[3]

We cannot say that the trial court erred in denying Brown's motion for a directed verdict because it was not clearly unreasonable for a jury to find the stab wound causing a pneumothorax to be a *serious physical injury*. As stated, *serious physical injury* can mean a "physical injury which creates a substantial risk of death."[4] Medical testimony at trial revealed that O'Connor was transferred to a level one trauma hospital and that her injury could have led to respiratory arrest and a tension pneumothorax, both of which can cause death. O'Connor was hospitalized for three days and monitored for one day without the chest tube before she could be released.

Brown cites *McDaniel v. Commonwealth*[5] and *Anderson v. Commonwealth*[6] for their assertions that a finding of *serious physical injury* "is dependent on the seriousness of the resulting injury, not the potential of the

---

[3] *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991) (citing *Commonwealth v. Sawhill*, 660 S.W.2d 3 (Ky. 1983)).

[4] KRS 500.080(15).

[5] 415 S.W.3d 643 (Ky. 2013).

[6] 352 S.W.3d 577 (Ky. 2011).

act to result in 'serious physical injury.'"[7] Brown is essentially arguing that the state of O'Connor's injury, as it was, did not constitute a *serious physical injury.* But from the evidence presented at trial, we cannot say that it was "clearly unreasonable" for a jury to find that, in and of itself, a pneumothorax, described by the evidence as potentially fatal, constituted a physical injury creating a substantial risk of death.

Our holding here is supported by the holding of an unpublished Court of Appeals case that our research shows is the only other time a Kentucky court addressed the issue of whether a pneumothorax constitutes a serious physical injury under the "physical injury creating a substantial risk of death" prong.[8] Under similar facts and witness testimony, the Court of Appeals in *Howard* found that a pneumothorax, in and of itself, does constitute a serious physical injury, because it constitutes a "physical injury creating a substantial risk of death."[9] And other jurisdictions with statutory definitions of *serious physical injury* identical to Kentucky's that have taken up this issue have also found the same.[10]

---

[7] *McDaniel*, 415 S.W.3d at 658; *see Anderson*, 352 S.W.3d at 581.

[8] *Howard v. Commonwealth*, No. 2007-CA-001907-MR, 2008 WL 4822290 (Ky. App. Nov. 7, 2008).

[9] *Id.* at *3.

[10] *See e.g. People v. Thompson*, 224 A.D.2d 646, 647 (N.Y. App. 1996); *State v. Barnes*, 714 S.W.2d 811, 813 (Mo. App. 1986); *Montgomery v. State*, No. 14-16-00365-CR, 2017 WL 2484375, at *3 (Tex. App. June 8, 2017)). S*mith v. State*, No. CACR 12-396, 2012 WL 5451807, at *3 (Ark. App. Nov. 7, 2012).

For these reasons, we cannot say that the trial court erred when it denied Brown's motion for directed verdict on Kidnapping enhanced to a Class A felony.

**B. Hardin County was not an improper venue for the trial.**

Brown argues that he was tried in the wrong country. That this issue is preserved for our review is undisputed.

Section 11 of the Kentucky Constitutes states, "In all criminal prosecutions the accused has the right to … a … trial by an impartial jury of the vicinage; but the General Assembly may provide by a general law for a change of venue in such prosecutions for both the defendant and the Commonwealth, the change to be made to the most convenient county in which a fair trial can be obtained." "Unless otherwise provided by law, the venue of criminal prosecutions and penal actions is in the county or city in which the offense was committed."[11]

"Where an offense is committed partly in one and partly in another county, or if acts and their effects constituting an offense occur in different counties, the prosecution may be in either county in which any of such acts occurs."[12] "Where the offense consists of kidnapping, seizing or confining a person without lawful authority, the prosecution may be in any county in

---

[11] KRS 452.510.
[12] KRS 452.550.

which the person is seized or confined or through or into which he has been carried or brought."[13]

"The presumption is that a trial was held in the appropriate county."[14] "Only slight evidence is required to sustain the venue."[15] "It has generally been held in this state that it is not necessary to show by direct evidence that the crime occurred in the county of its prosecution, but the fact may be inferred from evidence and circumstances which would allow the jury to infer where the crime was committed."[16]

As stated, Brown was charged with Complicity to kidnapping, Complicity to Attempted Murder, and Complicity to First-Degree Robbery. The location of the trailer, where Brown first showed up and began assisting the other assailants in the robbing and kidnapping of O'Connor, is in Hardin County. Brown then traveled with McCoy and O'Connor to a bridge over the Ohio River in Meade County, where Brown got O'Connor out of the vehicle and stabbed her. Brown argues that no evidence exists to support a finding that commission of his Complicity to Murder charge occurred in Hardin County, and therefore it

---

[13] KRS 452.600.

[14] *Bedell v. Commonwealth*, 870 S.W.2d 779, 781 (Ky. 1993) (citing *Hays v. Commonwealth*, 14 S.W. 833 (Ky. 1890)).

[15] *Bedell*, 870 S.W.2d at 781 (citing *Hardin v. Commonwealth*, 437 S.W.2d 931 (Ky. 1968)).

[16] *Commonwealth v. Cheeks*, 698 S.W.2d 832, 835 (Ky. 1985) (citing *Gilley v. Commonwealth*, 133 S.W.2d 67 (Ky. 1939)); *Rounds v. Commonwealth*, 139 S.W.2d 736 (Ky. 1940); *Vinson v. Commonwealth*, 248 S.W.2d 430 (Ky. 1952); *Byrd v. Commonwealth*, 283 S.W.2d 191 (Ky. 1955); *Woosley v. Commonwealth*, 293 S.W.2d 625 (Ky. 1956)).

was only proper to try his case in Meade County. We find this argument meritless.

KRS 502.020(1) defines complicity: "A person is guilty of an offense committed by another person when, with the intention of promoting or facilitating the commission of the offense, he: (a) Solicits, commands, or engages in a conspiracy with such other person to commit the offense; or (b) Aides, counsel, or attempts to aid such person in planning or committing the offense ... ." KRS 507.020(1)(a) generally defines murder: "A person is guilty of murder when: With intent to cause the death of another person, he causes the death of such person ... ."

Brown concedes that the commission of the two other crimes with which he was charged occurred in Hardin County. From the facts and circumstances of this case, a jury could infer that at some point in Hardin County, Brown decided to kill the victim. "Intent can be inferred from the actions of an accused and the surrounding circumstances. The jury has wide latitude in inferring intent from the evidence."[17] A jury could infer that Brown and any one of the other assailants formulated the intent to kill the victim as early as when one of the assailants called Brown, told him about the situation, and asked for him to come to the trailer; to as late as the last point in time that the car was physically in Hardin County; to anytime in between.

---

[17] *Anastasi v. Commonwealth,* 754 S.W.2d 860, 862 (Ky. 1988) (citing *Rayburn v. Commonwealth,* 476 S.W.2d 187 (Ky. 1972)).

Brown argues that the co-defendants who testified against Brown vehemently deny that they wanted O'Connor dead and that the plan was rather to "take [O'Connor] somewhere and drop her off." But this self-serving testimony does not discount the other facts and circumstances of this case supporting a finding that Brown and an assailant formulated the intent to kill O'Connor before entering Meade County.

Additionally, we addressed, albeit in dicta, an almost identical issue to this in *St. Clair v. Commonwealth.*[18] In *St. Clair*, the defendant committed capital kidnapping in Hardin County and murder in Bullitt County.[19] The defendant was tried separately for the offenses in the respective counties they occurred in, but "[t]hat need not have been the case."[20] "[T]here is little question that the capital kidnapping and murder of [the victim], if brought in the same county, could have been tried together."[21]

As such, we find no error in the trial on all charges having taken place in Hardin County.

## C. Brown suffered no undue prejudice when he was denied a continuance.

Brown next argues that the trial court erred when it denied his requested continuance of the jury trial. That this issue is preserved for appellate review is undisputed.

---

[18] 455 S.W.3d 869 (Ky. 2015).

[19] *Id.* at 877.

[20] *Id.* at 879.

[21] *Id.*

Kentucky Rules of Criminal Procedure ("RCr") 9.04 states, "The court, upon motion and sufficient cause shown by either party, may grant a postponement of the hearing or trial." The trial court's decision as to whether to grant or deny a continuance is reviewed for an abuse of discretion.[22] "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles."[23]

"Whether a continuance is appropriate in a particular case depends upon the unique facts and circumstances of that case."[24] "The trial court looks to the following factors in exercising its discretion: length of delay; previous continuances; inconvenience to litigants, witnesses, counsel and the court; whether the delay is purposeful or is caused by the accused; availability of other competent counsel; complexity of the case; and whether denying the continuance will lead to identifiable prejudice."[25]

Brown argues that the trial court should have granted his motion for a continuance for two reasons. First, shortly before trial, three of the five co-defendants decided to plead guilty in exchange for their testimony against Brown. Brown argues that this late development forced his counsel to change defenses to prepare for the co-defendants' testimony. Second, Brown wanted a

---

[22] *Snodgrass v. Commonwealth,* 814 S.W.2d 579, 581 (Ky. 1991) (overruled by *Lawson v. Commonwealth,* 53 S.W.3d 534 (Ky. 2001) on a different issue).

[23] *Goodyear Tire and Rubber Co. v. Thompson,* 11 S.W.3d 575, 581 (Ky. 2000) (citing *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky. 1999)).

[24] *Snodgrass,* 814 S.W.2d at 581 (citing *Ungar v. Sarafite,* 376 U.S. 575, 589 (1964)).

[25] *Snodgrass,* 814 S.W.2d at 581 (citing *Wilson v. Mintzes,* 761 F.2d 275, 281 (6th Cir. 1985)).

fingerprint-evidence expert to testify at trial against the Commonwealth's purported use of fingerprint evidence. Counsel alleged that she did not have all the information she needed hire a fingerprint evidence-expert until six days before trial. But both of Brown's arguments fail for the reasons the trial court identified and the Commonwealth currently identifies.

Regarding the co-defendants' testimony against Brown, Brown was aware of the substance of the co-defendants' testimony and the possibility that the co-defendants might decide to testify against him well before trial. Almost a month before trial, Brown's counsel filed a motion for redacted statements of the other co-defendants, showing that counsel was aware of the co-defendants' statements to the police. A week later, the trial court discussed these statements with Brown's counsel, explicitly stating that the co-defendants may choose to testify, to which Brown's counsel responded, "I am aware of that." After reviewing the hearings on the guilty pleas of the co-defendants the week before trial, the trial court found that the co-defendants made no new statements that implicated Brown beyond what he already knew. So the trial court concluded that the guilty pleas did not change the Commonwealth's or Brown's case strategy.

Under these facts, we cannot say that the trial court abused its discretion when denying Brown's continuance for this reason. The factual circumstances of this case indicate that Brown knew almost a month before trial how he would be implicated by his co-defendants if they chose to testify in his case. The fact that the co-defendants chose to take plea deals and testify

12

against Brown does not change the fact that Brown should have prepared for this potential development.

Regarding the fingerprint evidence expert, the record shows that Brown understood the Commonwealth planned to introduce fingerprint evidence the summer before the March 20 trial date, as the Commonwealth provided a fingerprint analysis report and identified its fingerprint-evidence expert that summer. Defense counsel first requested additional discovery related to the Commonwealth's fingerprint-evidence expert's analysis and conclusions a little over a month before trial. The Commonwealth provided this information to Brown one week before trial. This is the point in time when Brown argued he needed a continuance because his counsel needed the information it received from the Commonwealth before she could hire a rebuttal fingerprint evidence expert.

The trial court responded that the expert would be able to quickly determine if there was any exculpatory evidence, in addition to stating that it was willing to make accommodations during trial to ensure that Brown's fingerprint-evidence expert's testimony was presented. We find it important to note that Brown never presented any affidavits of the substance of the expert's testimony nor any evidence that he had subpoenaed the expert. The record also does not reveal any statement that the expert would testify to, but only what the expert might find in his or her review.

Under these facts, we cannot say that the trial court abused its discretion when denying Brown's continuance. Brown knew more than half a

13

year before trial that the Commonwealth would introduce fingerprint evidence at trial and did not request additional evidence to determine if a rebuttal expert should be hired until a month before trial. Additionally, the trial court announced its attempt to ensure that whatever testimony the expert provided would be viewed by the jury. Lastly, Brown has not identified nor suggested what exculpatory evidence the expert would have provided.

On these facts, the trial court did not err when it denied Brown's motion for a continuance.

### D. Error in the admission of the victim's statements was harmless beyond a reasonable doubt, and no prosecutorial misconduct occurred by references to the victim's statements.

Brown next alleges two errors occurred at trial based on the same factual premise. The parties dispute the preservation of Brown's arguments.

Brown stabbed O'Connor on the Ohio River bridge and fled the scene. O'Connor was found by a passerby, who called police, who transported her to a hospital. En route to the hospital and while at the hospital, O'Connor made statements to the police about what happened, implicating Brown. For reasons unrelated to this case, O'Connor later died before trial, rendering her unavailable to appear at trial.

Brown filed a motion in limine to exclude O'Connor's statements made to the police, which the trial court correctly granted. Nonetheless, at trial, the Commonwealth's direct examination of police officers elicited testimony about what O'Connor told the officers about what Brown did to her and the jewelry that was taken from her. We note that Brown never objected during the officers'

14

testimony. Brown additionally alleges that the prosecutor improperly referenced O'Connor's statements in his closing argument.

As a preliminary matter, we conclude that Brown properly preserved these issues for appellate review despite the lack of contemporaneous objection. "Motions in limine can preserve issues for appellate review, provided they are sufficiently detailed about what the moving party intends to exclude."[26] The motion in this case, which the trial court granted, mentioned the requested exclusion of "the statements of [O'Connor]," identifying that "the alleged victim made statements about what occurred." Brown sufficiently detailed what he requested to be excluded, which properly preserves this issue for appellate view.

In this case, admission of any of O'Connor's statements into evidence, and the prosecutor's alleged use of them in closing argument, is no doubt error. The trial court ordered the parties to refrain from offering these statements into evidence, and the statements themselves raise Confrontation Clause[27] and hearsay issues. But we are satisfied, based on the evidence adduced at trial, that admission of any of O'Connor's statements and any "reference" to them in the Commonwealth's closing arguments were simply harmless errors.

---

[26] *Montgomery v. Commonwealth*, 505 S.W.3d 274, 280 (Ky. 2016) (citing *Lanham v. Commonwealth*, 171 S.W.3d 14, 22 (Ky. 2005)).

[27] *See* U.S. Const. Amend. VI; Ky. Const. § 11.

"No error in ... the admission ... of evidence ... is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order unless it appears to the court that the denial of such relief would be inconsistent with substantial justice. The court ... must disregard any error or defect in the proceeding that does not affect the substantial rights of the parties."[28] "A reviewing court should ask 'whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.'"[29] Because admission of these statements implicates the Confrontation Clause,[30] we must determine if the error was harmless beyond a reasonable doubt.[31]

The jury heard abundant evidence, not including O'Connor's statements, implicating Brown, on which to base its convictions. Three co-defendants' testimony and fingerprint evidence implicated Brown in his involvement with the kidnapping of O'Connor. McCoy testified that Brown handed him a paper towel with O'Connor's jewelry in it, and the officers who arrested McCoy found the jewelry on him, implicating Brown in his complicity-to-first-degree-robbery charge. O'Connor was found stabbed, and the record reveals a phone call in

---

[28] RCr 9.24.

[29] *McDaniel v. Commonwealth*, 415 S.W.3d 643, 656 (Ky. 2013) (quoting *Kotteakos v. U.S.*, 328 U.S. 750, 765 (1946)) (citing *Winstead v. Commonwealth*, 283 S.W.3d 678, 689 (Ky. 2009)).

[30] The statements at issue were made by the victim who was unavailable to testify because she died under circumstances unrelated to this case.

[31] *See Whittle v. Commonwealth*, 352 S.W.3d 898, 905 (Ky. 2011) (citing *Chapman v. California*, 386 U.S. 18, 22-24 (1967)).

which Brown admits to stabbing O'Connor, supporting Brown's complicity-to-murder charge.

Only one of O'Connor's statements appears to be uncorroborated by any other evidence—that Brown told her that she could either jump off the bridge or be stabbed. But considering all the other evidence implicating Brown on all his charges, the inclusion of this statement cannot be said to have substantially influenced the jury's decision. Simply put, the erroneous inclusion of the victim's statements cannot be said to have "substantial influence" in this case in view of the abundant, corroborated evidence admitted against Brown, and the inclusion, therefore, was harmless beyond a reasonable doubt.[32]

Brown also alleges prosecutorial misconduct on the part of the Commonwealth for having referred to O'Connor's statements in its closing argument. But our review of the Commonwealth's closing argument reveals no statement, direct or indirect, by the prosecutor mentioning O'Connor's statements in any way. The Commonwealth only mentioned that Brown and McCoy "could not get the victim over the bridge, so they went to Plan B." This allegation is not predicated on O'Connor's statements; rather, it is an inference made based on the events that had transpired up to that point.

---

[32] In *Whittle*, this Court found that the erroneous evidence admitted was really the only evidence that proved an element of the offense, thus leading to our finding of reversible error in that case. *Whittle*, 352 S.W.3d at 906. This is not the case here, however, where an abundance of evidence exists supporting Brown's convictions.

Nonetheless, Brown argues that this allegation "exceede[d] the bounds of fair comment and ventures into a comment unsupported by any facts in evidence." "Prosecutorial misconduct is a 'prosecutor's improper or illegal act involving an attempt to persuade the jury to wrongly convict a defendant or assess an unjustified punishment,'"[33] which includes making improper comments during closing arguments.[34]

Closing arguments are not evidence, and prosecutors are given "wide latitude" during closing arguments.[35] So reversal is warranted "only if the misconduct is 'flagrant', or if each of the following three conditions is satisfied: (1) proof of defendant's guilt is not overwhelming; (2) defense counsel objected; and (3) the trial court failed to cure the error with a sufficient admonishment to the jury."[36] We use the *Dickerson* test to determine if the prosecutor's comments were "flagrant": "(1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused."[37]

In this case, the proof against Brown was overwhelming. Brown failed to object to the allegation during closing argument. While the allegation was

---

[33] *Murphy v. Commonwealth*, 509 S.W.3d 34, 49 (Ky. 2017) (citing *Commonwealth v. McGorman*, 489 S.W.3d 731, 741-42 (Ky. 2016)).

[34] *Brown v. Commonwealth*, 313 S.W.3d 577, 627 (Ky. 2010).

[35] *Stopher v. Commonwealth*, 57 S.W.3d 787, 805-06 (Ky. 2001).

[36] *Matheney v. Commonwealth*, 191 S.W.3d 599, 606 (Ky. 2006) (quoting *Barnes v. Commonwealth*, 91 S.W.3d 564, 568 (Ky. 2002)).

[37] *Dickerson v. Commonwealth*, 485 S.W.3d 310, 329 (Ky. 2016).

deliberately placed before the jury, the allegation was not extensively discussed. Lastly, we find it difficult to characterize this allegation as "misleading" or "prejudicial" based on the entirety of the facts and circumstances of this case. Such an inference was a proper deduction based on the events that transpired in this case. So we find no prosecutorial misconduct in this case warranting reversal.

**E. The jury instructions contained no unanimity error.**

Lastly, Brown argues that the complicity-to-first-degree robbery jury instruction in this case contained a fatal unanimity error. That this issue is preserved for appellate review is undisputed.

The complicity-to-first-degree robbery jury instruction in this case stated, in relevant part, the following:

> You will find the Defendant guilty of First Degree Robbery, Complicity under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:
>
> A. That in this county ... the Defendant, alone or in complicity with another stole money or jewelry or car from [O'Connor], or [the co-defendant] did so with the Defendant, intending that [the co-defendant] do so, aiding him or attempting to aid him or standing ready to aid him;

Brown only takes issue with the inclusion of three different types of property that the jury could choose from, i.e. "money or jewelry or car." We reject Brown's argument that principles of jury unanimity require such specific fact-finding by the jury. Brown couches his argument as a failure to obtain a

19

unanimous verdict—a failure to direct the fact-finder to agree upon every fact—in order to convict the defendant of a crime.[38]

In *Martin v. Commonwealth*, this Court identified the two types of "unanimous-verdict violations."[39] "The first type ... occurs when multiple counts of the same offense are adjudicated in a single trial." This type is not at issue in this case because Brown was charged with only one count of robbery.

The second type "occurs when a jury instruction may be satisfied by multiple criminal acts by the defendant."[40] More specifically, this requirement "is violated when 'a general jury verdict [is] based on an instruction including two or more *separate* instances of a criminal offense, whether explicitly stated in the instruction or based on the proof.'"[41] This type of unanimous-jury violation is also not at issue here because only one robbery occurred. "This Court has repeatedly held that the taking of multiple items ... in one transaction constitutes only one theft."[42] Simply because multiple pieces of property were taken from O'Connor does not mean that more than one robbery occurred.

---

[38] "Section 7 of the Kentucky Constitution requires a unanimous verdict reached by a jury of twelve persons in all criminal cases." *Wells v. Commonwealth*, 561 S.W.2d 85, 87 (Ky. 1978) (internal citations omitted).

[39] 456 S.W.3d 1, 6 (Ky. 2015).

[40] *Id.* at 7.

[41] *Id.* at 6-7 (quoting *Johnson v. Commonwealth*, 405 S.W.3d 439, 449 (Ky. 2013)) (emphasis added).

[42] *Wilson v. Commonwealth*, 438 S.W.3d 345, 352 (Ky. 2014).

20

A seemingly third type of unanimity error also appears to exist in our jurisprudence—a potential violation of unanimity stemming from a "combination jury instruction." "A 'combination' instruction permitting a conviction of the same offense under either of multiple alternative theories does not deprive a defendant of his right to a unanimous verdict, so long as there is evidence to support a conviction under either theory."[43] "It is not necessary that a jury, in order to find a verdict should concur in a single view of the transaction disclosed by the evidence. If the conclusion may be justified upon either of two interpretations of the evidence, the verdict cannot be impeached by showing that a part of the jury proceeded upon one interpretation and part upon the other ... ."[44]

For additional guidance, as we have done so before,[45] we turn to the U.S. Supreme Court's explanation of this issue:

> Crimes are made up of factual elements, which are ordinarily listed in the statute that defines the crime. A (hypothetical) robbery statute, for example, that makes it a crime (1) to take (2) from a person (3) through force or the threat of force (4) property (5) belonging to a bank would have defined the crime of robbery in terms of the five elements just mentioned. Calling a particular kind of fact an "element" carries certain legal consequences.[46] The consequence that matters for this case is that a jury in a ...

---

[43] *Robinson v. Commonwealth,* 325 S.W.3d 368, 370 (Ky. 2010) (citing *Johnson v. Commonwealth,* 12 S.W.3d 258, 265-66 (Ky. 1999)); *Miller v. Commonwealth,* 77 S.W.3d 566, 574 (Ky. 2002)).

[44] *Wells v. Commonwealth,* 561 S.W.2d 85, 88 (Ky. 1978).

[45] *See Johnson v. Commonwealth,* 405 S.W.3d 439 (Ky. 2013) (examining federal law to assist in defining the unanimity concept).

[46] *Almendarez-Torres v. United States,* 523 U.S. 224, 249 (1998).

criminal case cannot convict unless it unanimously finds that the Government has proved each element.[47]

[A] ... jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime. Where, for example, an element of robbery is force or the threat of force, some jurors might conclude that the defendant used a knife to create the threat; others might conclude he used a gun. But that disagreement—a disagreement about means—would not matter as long as all 12 jurors unanimously concluded that the Government had proved the necessary related element, namely, that the defendant had threatened force[48].[49]

As the U.S. Supreme Court has made clear, whether a unanimous verdict violation stems from a "combination jury instruction" first depends on whether a particular kind of fact constitutes a "factual element[] ... listed in the statute that defines the crime.

KRS 502.020(1) generally defines complicity: "A person is guilty of an offense committed by another person when, with the intention of promoting or facilitating the commission of the offense, he: (a) Solicits, commands, or engages in a conspiracy with such other person to commit the offense; or (b) aids, counsels, or attempts to aid such person in planning or committing the offense ... ." KRS 515.020(1) generally defines First-Degree Robbery: "A person is guilty of robbery in the first degree when, in the course of committing theft, he uses or threatens the immediate use of physical force upon another person

---

[47] *Johnson v. Louisiana*, 406 U.S. 356, 369-71 (1971) (Powell, J., concurring); *Andres v. United States*, 333 U.S. 740, 748 (1948).

[48] *See McKoy v. North Carolina*, 494 U.S. 433, 449 (1990).

[49] *Richardson v. U.S.*, 526 U.S. 813, 817-18 (1999).

with intent to accomplish the theft." KRS 514.030(1)(a) generally defines theft: "[A] person is guilty of theft...when he unlawfully ... takes or exercises control over *movable property* of another with intent to deprive him thereof."[50]

In none of the above-stated definitions relevant for Brown's complicity-to-first-degree-robbery conviction do we find identification of the exact property taken to be a "factual element [] ... listed in the statute that defines the crime." Rather, the "factual element [] ... listed in the statute that defines the crime" that the jury instruction must force the jurors to agree on unanimously is that *movable property* was taken.

Identification of the exact property the jury believed Brown was complicit in taking is the kind of "possible set[] of underlying brute facts mak[ing] up a particular element" that the U.S. Supreme Court stated the "jury need not always decide unanimously."[51] The jury instructions forced the jury to unanimous agreement on the fact that *movable property* was taken, simply identifying three pieces of movable property that the jury could have found to be taken. Because the jury instructions forced the jury to agree unanimously that *movable property*, i.e. the "factual element [] ... listed in the statute that defines the crime," was taken, no unanimity error occurred in the identification of three specific pieces of movable property.

---

[50] (emphasis added).

[51] *Richardson*, 526 U.S. at 817-18.

### III. CONCLUSION.

Finding no reversible error, we affirm the entirety of Brown's convictions and sentences.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Kathleen Kallaher Schmidt
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Jesse Robbins
Assistant Attorney General