# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.



Supreme Court of Kentucky

2017-SC-000557-MR

DATE 1/3/19 Kim Robuson, DC

JESSE ALLEN STUMP                                      APPELLANT


                    ON APPEAL FROM SHELBY CIRCUIT COURT
V.                  HONORABLE CHARLES R. HICKMAN, JUDGE
                              NO. 12-CR-00129


COMMONWEALTH OF KENTUCKY                                APPELLEE



              **MEMORANDUM OPINION OF THE COURT**

                            **AFFIRMING**

A Shelby Circuit Court jury convicted Appellant, Jesse Allen Stump, of

first-degree rape. In accordance with the jury's recommendation, Stump was

sentenced to twenty years' imprisonment. He now appeals as a matter of right,

Ky. Const. § 110(2)(b), alleging that the trial court erred in its handling of

evidence of prior bad acts and denying his proposed jury instruction regarding

missing evidence.


                          **I. BACKGROUND**

Stump was indicted on July 11, 2012, of first-degree rape and incest[1] for

the rape of his step-granddaughter, Sally,[2] on April 14, 2012. After a two-day

---

[1] Stump was also indicted of an additional count each of rape and incest
relating to another victim. However, the charges for the other victim were severed
from those relevant to this appeal.

[2] In keeping with this Court's practices, throughout this opinion, the minor
victim's name has been changed to protect her anonymity.

trial, beginning July 31, 2017, Stump was convicted of one count of first-degree rape and sentenced to twenty years' imprisonment.

Sally indicated that she first reported the charged rape to her best friend. The record reflects that she then reported the rape to a teacher at her school on April 23, 2012. The teacher referred her to a school guidance counselor, who called the Commonwealth's abuse hotline. After speaking to the counselor, Sally underwent a forensic interview on May 16. This interview was conducted by Kimberly Cook at the Child Advocacy Center in Louisville, Kentucky.

During this interview, Cook asked Sally if anything like the rape she reported had happened before with Stump. Sally answered "[w]ith him? No. Maybe. I think when I was little it happened before." Cook proceeded questioning Sally regarding possible rapes, to which Sally answered that she was smaller and couldn't remember what occurred and nothing else had happened on any other day that she remembered. Following this interview, Sally underwent a medical examination on June 8 at the Child Advocacy Center.

Regarding the charged rape, Sally testified that Stump told her to go into his bedroom, asked her to take off her shirt, pants, and underwear, and instructed her to lie down on the bed. Sally said she complied with Stump's orders, and he touched on her sides and then put his penis inside her. Sally further testified that she asked Stump to stop because it hurt. She said that

2

afterwards, he told her not to tell anyone about what he had done to her and she went to be with her sister.

On October 27, 2016, (nine months prior to trial) the Commonwealth filed a motion to introduce evidence pursuant to KRE 404(b). The motion indicated that Stump had sexually assaulted Sally on numerous occasions before April 2012. This motion was for an order to allow the Commonwealth to introduce evidence—expected to be in the form of Sally's testimony—of other acts of sexual abuse Stump perpetrated upon Sally other than the isolated incident set forth in the indictment. As attached in an appendix to Stump's brief to this Court, it appears the Commonwealth also emailed a copy of a notice and motion pursuant to KRE 404(b) to Stump's counsel on July 21, 2017. It was only after the Commonwealth sent this email to Stump's counsel providing a second notice (presumably as a courtesy, as the required notice had been filed with the trial court nine months before) that Stump's counsel filed a motion in limine to exclude the KRE 404(b) prior bad acts evidence due to lack of adequate notice pursuant to KRE 404(c). The trial court denied Stump's motion and indicated it would admit evidence pertaining to the alleged prior rape.

During trial, Sally testified as to Stump's prior bad acts—specifically an alleged rape that she had not reported to authorities. She testified that Stump had previously raped her when she was twelve years old. She stated that Stump had told her to go to his room, pull down her pants, and lie down on his bed. She stated that he turned around and used a penis pump, and then laid

3

on her and held himself up. She testified that he put his penis "in" her, and, once he had finished, that he went to the bathroom and she went to be with her sister in a different room. The Commonwealth then asked Sally if Stump put his penis "on" her vagina, and Sally answered yes. In spite of the Commonwealth's inartful question given the fact that Sally had clearly stated Stump had put his penis "in" her, Sally went on to make it clear that Stump had done more than merely put his penis "on" her vagina. Sally indicated in her testimony that she bled from the encounter and that it hurt more than the second rape. Furthermore, Sally testified that she told Stump it hurt, but he did not stop. She stated Stump also told her not to tell anyone what he had done to her on this occasion.

Sally testified that she spent one weekend a month at Stump's residence prior to the first rape. However after, the first rape occurred, she said she did not go back to Stump's residence for a while. When she started visiting Stump's residence again, the charged rape occurred.

## II. ANALYSIS

### A. Prior Bad Acts

#### 1. Motion in Limine

Stump alleges that the trial court erred when it overruled his motion in limine concerning the admission of KRE 404(b) prior bad acts evidence. On appeal, "[w]e will not disturb a trial court's decision to admit evidence absent an abuse of discretion." *Matthews v. Commonwealth*, 163 S.W.3d 11, 19 (Ky. 2005) *citing Partin v. Commonwealth*, 918 S.W.2d 219, 222 (Ky. 1996). "The

4

test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). Applying this test to the case at bar, we will not overturn the trial court's decision, as the trial court did not abuse its discretion in denying's Stump's motion in limine and admitting the evidence of the prior alleged rape.

Stump filed his motion to exclude evidence of uncharged crimes due to the Commonwealth's alleged failure to provide proper notice. The uncharged crime in question is the alleged rape that Sally testified to. According to Sally, on this occasion, Stump raped her when she was twelve using a penis pump before inserting his penis into her vagina.

At the in-chambers hearing on this motion conducted prior to trial, the Commonwealth argued that Stump had been put on notice, as allegations of prior sexual assault and an approximate timeline for these assaults were produced in discovery—and Stump was aware that the Commonwealth had medical records referencing a prescription for the penis pump. Also, a notice and motion to introduce evidence pursuant to KRE 404(b) filed on October 27, 2016, reflected the Commonwealth's intent to introduce evidence of prior sexual assaults Stump perpetrated against Sally.

Stump also argues that he was unfairly prejudiced by Sally's testimony in which she referred to the alleged prior rape. He contends that the Commonwealth withheld the information of the alleged rape and the medical records referencing a penis pump prescription in bad faith. However, Sally's

5

allegation that Stump had sexually assaulted her on numerous occasions was included in discovery. The Commonwealth also claims that Stump's counsel had visited its office and viewed the medical records referencing the penis pump. During the nine months between the Commonwealth's notice and Stump's motion in limine, he had ample opportunity to request additional information regarding the allegations of uncharged sexual assault.

Stump maintains that he was not given adequate notice pursuant to KRE 404(c) to prepare his defense. KRE 404(c) reads:

> In a criminal case, if the prosecution intends to introduce evidence pursuant to subdivision (b) of this rule as a part of its case in chief, it shall give reasonable pretrial notice to the defendant of its intention to offer such evidence. Upon failure of the prosecution to give such notice the court may exclude the evidence offered under subdivision (b) or for good cause shown may excuse the failure to give such notice and grant the defendant a continuance or such other remedy as is necessary to avoid unfair prejudice caused by such failure.

Here, the KRE 404(c) requirement that the Commonwealth give "reasonable pretrial notice" of intention to introduce other criminal evidence was satisfied as the fact that Sally alleged sexual assaults happening on numerous occasions was included in discovery.

"The intent of [KRE 404(c)] is to provide the accused with an opportunity to challenge the admissibility of this evidence through a motion in limine and to deal with reliability and prejudice problems at trial." *Bowling v. Commonwealth*, 942 S.W.2d 293, 300 (Ky. 1997); Robert G. Lawson, The Kentucky Evidence Law Handbook, § 2.25 (3rd Ed.1993). This requires us to examine the facts surrounding the admission of the evidence in question.

6

On August 12, 2012—nearly five years before trial—the Commonwealth filed discovery materials containing a Kentucky State Police supplemental report. This report details that Sally claimed that Stump had raped her in April 2012 and that it had happened numerous times before. A crime supplement document of the KSP records provides an approximate timeline concerning Sally's abuse as 2006-2008 and 2009-2012.

In *Tamme v. Commonwealth*, 973 S.W.2d 13 (Ky. 1998), *Walker v. Commonwealth*, 52 S.W.3d 533 (Ky.2001), and *Bowling*, 942 S.W.2d 293, the appellants all raised notice issues concerning the admission of KRE 404(b) evidence. In those cases, we upheld the notice on "actual notice" grounds.

In *Tamme*, an alibi witness testified at the hearing on a motion for a new trial that he had been with the appellant in Indiana on the day of the murders. 973 S.W.2d 13. The Commonwealth was able to discredit the alibi witness's testimony by establishing that he was incarcerated in the Barren County jail on the day of the murders, and, thus, could not have been in Indiana with the appellant as claimed. The alibi witness later pleaded guilty to perjury with respect to this testimony. At retrial, the Commonwealth introduced evidence of the witness's perjury following the appellant's introduction of two new alibi witnesses. This Court held that "[o]bviously, no prejudice occurred, because Appellant had actual notice of this evidence and raised the KRE 404(b) issue both in his own in limine motion and when the evidence was offered at trial." 973 S.W.2d at 32 (other citations omitted).

In *Walker*, the appellant also argued that the Commonwealth failed to provide reasonable notice under KRE 404(c) of its intent to introduce KRE 404(b) evidence at trial regarding a controlled buy that had occurred prior to arrest. 52 S.W.3d 533. The buy supplied the police with probable cause to obtain a search warrant of the appellant's residence. When executing the warrant, police caught the appellant attempting to flush cocaine down the toilet. This act was the basis of the appellant's arrest. The Commonwealth did not plan to introduce the evidence of the controlled buy until a witness (who was supposed to testify that the appellant had sold crack cocaine on the day of the search) failed to appear. This caused the Commonwealth to re-evaluate its need to introduce the controlled-buy evidence. The trial court admitted the evidence only to show the appellant's intent to sell. This Court held that the trial court did not abuse its discretion in admitting the evidence, as the appellant was able to challenge the admissibility through a motion in limine on KRE 404(b) grounds and the evidence was not unknown to the defense, thus minimizing any surprise. The facts of *Walker* are similar to the case at hand, as the evidence of Sally's allegation that Stump had sexually assaulted her on numerous occasions was contained in discovery, and, therefore, was known to the defense.

The appellant in *Bowling*, also raised the issue of insufficient notice pursuant to KRE 404(c). 942 S.W.2d 293. The evidence in that case regarded testimony that identified the appellant as someone who had fired gunshots at a witness three days after the murder of the victim in question. This Court

upheld the trial court's oral ruling that the Commonwealth had furnished discovery that supplied the appellant with notice. Further, this Court held that no prejudice had occurred because the appellant had actual notice and raised the 404(b) issue in his motion in limine. As in *Bowling*, Stump had actual notice of the alleged prior sexual assault through discovery and also raised the issue in his motion in limine filed before trial.

Just as in the cases discussed above, no prejudice occurred here by admitting Sally's testimony and the medical records in question—as Stump had actual notice and had raised the issue in his motion in limine. The actual notice was provided throughout discovery and in the documents providing an approximate timeline for the alleged sexual assault and stating that Sally claimed Stump had sexually assaulted her on numerous occasions.

Further, Stump was put on notice by the motion to introduce evidence pursuant to KRE 404(b) that was filed on October 27, 2016, which stated that the Commonwealth moved to introduce evidence that the defendant sexually assaulted the victim on numerous occasions before the charged rape. To reiterate, this motion was filed close to nine months before trial began. This notice alone gave Stump adequate notice to prepare his defense. Additionally, the Commonwealth emailed Stump a similar notice on July 21, 2017, regarding evidence of other acts of sexual abuse by the defendant perpetrated upon the victim.

9

We hold that Stump had adequate opportunity to prepare a defense in anticipation of the Commonwealth's introduction of evidence regarding the uncharged alleged rape.

### 2. Prior Inconsistent Statement

Though unclear, it appears Stump attempts to argue that the trial court abused its discretion in sustaining the Commonwealth's objection regarding prior inconsistent statement testimony. In trying to impeach Sally, Stump's counsel questioned her about her forensic interview with the Child Advocacy Center. Defense counsel asked Sally if she had mentioned the previous rape involving the penis pump during the interview. Sally testified that she had not, as she was anxious that day and did not want to talk about it.

Following Sally's answer, Stump's counsel asked Sally to read a passage from the transcript of her interview. The Commonwealth objected on the basis that Stump was attempting to improperly impeach Sally and a bench conference ensued. After the bench conference, Stump did not ask Sally any further questions regarding the previous rape. As noted, Sally testified that she had not discussed the previous rape during the interview and explained her reasoning. This Court held in *Bratcher v. Commonwealth* that "statements were not prior inconsistent statements as contemplated by KRE 613 because [the witness] had already admitted that he lied at the prior suppression hearing. Playing the videotape would have had no impeachment value and would simply have been cumulative." 151 S.W.3d 332, 342 (Ky. 2004).

10

In *Bratcher*, the appellant claimed that the trial court interfered with his right of confrontation by disallowing the introduction of a witness's prior statement. The prior statement was a videotape of a suppression hearing. The witness had admitted that he lied at said suppression hearing during his direct testimony. The appellant wanted to use the videotape as evidence of a prior inconsistent statement. However, the trial court refused to allow the appellant to use the videotape. Since the witness had already admitted he lied, the videotape contained no prior inconsistent statement and would likely confuse the jury. *Id.*

Here, Sally reading a passage from the transcript lacked impeachment value and would have merely been cumulative, as she had already admitted on the stand that she was anxious and did not talk about the previous rape during said interview. A prior statement cannot be deemed inconsistent if it does not conflict with the witness's testimony.

### 3. Admissibility of Evidence

While this issue also lacks clarity, Stump appears to argue that the evidence of the prior rape was inadmissible. However, "[e]vidence of other crimes, wrongs, or acts is admissible if relevant for some purpose other than to prove character, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Tamme*, 973 S.W.2d at 23; KRE 404(b)(1).

An exception allowing the introduction of 404(b) evidence exists when the acts are admitted to prove the perpetrator's opportunity to commit the crime.

Therefore, prior bad acts evidence showing that Stump had the opportunity to rape Sally is admissible. *See United States v. Blakeney*, 942 F.2d 1001, 1017 (6th Cir. 1991). Through Sally's testimony, the Commonwealth showed Stump had the opportunity to rape Sally on both occasions Sally alleged at trial.

Sally testified that at the time the charged rape occurred, she was living with her father and step-mother. She said that she would typically spend one weekend a month at Stump's residence before the uncharged rape she testified about occurred. She further stated that she would be left alone with Stump while his wife (her grandmother) was at work. The first rape occurred when Stump was afforded this opportunity to access Sally outside the presence of other adults. Sally testified that after the uncharged rape occurred, she quit going to Stump's residence for some time. Further, she stated that when she returned to Stump's residence after foregoing her weekend visits for a while, the charged rape occurred. Sally's testimony reflects that Sally's grandmother was not home on the day of the charged rape. This reflects Stumps opportunity to commit the acts of sexual abuse.

Furthermore, "evidence of similar acts perpetrated against the same victim are almost always admissible . . . ." *Noel v. Commonwealth*, 76 S.W.3d 923, 931 (Ky. 2002). Applying that rule to the facts in *Harp*, this Court upheld the trial court's admission of evidence "regardless of whether the conduct was specifically contained in the indictment against [the appellant]. [The appellant] unsuccessfully sought to exclude the evidence of uncharged sexual contact with [the victim]." 266 S.W.3d 813, 822 (Ky. 2008).

12

The 404(b) evidence of prior bad acts in *Harp* included the appellant exposing his genitals to the victim on multiple occasions. This Court reasoned that: "we do not perceive that any prejudice suffered by Harp was sufficient to overcome the general rule regarding admissibility of similar acts perpetrated against the *same victim.* Thus, we find no error in the trial court's decision to admit the KRE 404(b) evidence in question." *Id.* at 822-23 (emphasis added). The standard quoted in *Harp*, that evidence of similar acts perpetrated against the same victim is almost always admissible, is clearly applicable to the case at hand as the two rapes are similar acts that occurred to Sally.

Therefore, even if the acts were not used to show Stump's opportunity to commit the charged act, the uncharged rape would have been admissible evidence under *Harp.*

### 4. Closing Statements

The Commonwealth characterized the first alleged act of sexual abuse as rape during its closing statement. The trial court sustained Stump's objection to this characterization, reasoning that it did not believe that Sally testified that penetration had occurred in the uncharged rape.

Notably, Sally testified that Stump put his penis "in" her during this first alleged (albeit uncharged) rape. Therefore, pursuant to her testimony, penetration occurred. After Sally's statement that Stump penetrated her, the prosecutor said, "when you say he put his penis in me, you felt his penis on your vagina." Sally then detailed about how the abuse hurt and that it caused

13

her to bleed. Thus, the Commonwealth was not mistaken in referring to the uncharged incident as a rape.

Nonetheless, the trial court (mistakenly) did not think that Sally had testified as to penetration and admonished the jury that the Commonwealth's characterization of the prior sexual assault as a rape was inconsistent with Sally's testimony.

Stump asserts that this characterization of the prior bad act as rape necessitates reversal. We disagree, as we have consistently held that opening and closing arguments are not evidence and prosecutors have a wide latitude during both. *Stopher v. Commonwealth*, 57 S.W.3d 787, 805–06 (Ky. 2001). As we held in *Brown v. Commonwealth*:

> reversal is warranted "only if the misconduct is 'flagrant', or if each of the following three conditions is satisfied: (1) proof of defendant's guilt is not overwhelming; (2) defense counsel objected; and (3) the trial court failed to cure the error with a sufficient admonishment to the jury." *Matheney v. Commonwealth*, 191 S.W.3d 599, 606 (Ky. 2006) (quoting *Barnes v. Commonwealth*, 91 S.W.3d 564, 568 (Ky. 2002). We use the Dickerson test to determine if the prosecutor's comments were "flagrant": "(1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused." *Dickerson v. Commonwealth*, 485 S.W.3d 310, 329 (Ky. 2016).

553 S.W.3d 826, 837–38 (Ky. 2018). In this case, the evidence against Stump was overwhelming. We find it difficult to characterize the Commonwealth's reference to the uncharged rape as rape as "misleading" or "prejudicial" based on the entirety of the facts and circumstances of this case, as Sally did testify that penetration had occurred.

14

In any event, the characterization here was not so egregious or prejudicial as to require reversal—especially in light of the trial court's admonition correcting the characterization for the jury. *Winstead v. Commonwealth*, 327 S.W.3d 386, 400 (Ky. 2010). Regarding admonitions, this Court held in *Johnson v. Commonwealth*:

> A jury is presumed to follow an admonition to disregard evidence and the admonition thus cures any error. *Mills v. Commonwealth*, Ky., 996 S.W.2d 473, 485 (1999) . . . There are only two circumstances in which the presumptive efficacy of an admonition falters: (1) when there is an overwhelming probability that the jury will be unable to follow the court's admonition and there is a strong likelihood that the effect of the inadmissible evidence would be devastating to the defendant, *Alexander v. Commonwealth*, Ky., 862 S.W.2d 856, 859 (1993); or (2) when the question was asked without a factual basis and was "inflammatory" or "highly prejudicial." *Derossett v. Commonwealth*, Ky., 867 S.W.2d 195, 198 (1993); *Bowler v. Commonwealth*, Ky., 558 S.W.2d 169, 171 (1977).

105 S.W.3d 430, 441 (Ky. 2003).

After reviewing the record, we are not persuaded that the Commonwealth's statements were made in error (as the trial court was mistaken that Sally had not testified regarding penetration). However, even if the statement were error, any such error was cured as it is presumed the jury was able to follow the admonition to disregard the Commonwealth's characterization to the prior abuse as rape during closing statements.

### B. Missing Evidence Jury Instruction

Stump preserved this issue by tendering a written missing evidence jury instruction pertaining to a forensic pelvic examination. The trial court denied this instruction, through an oral ruling, stating that the forensic pelvic

15

examination did not fall within the definition of missing evidence in this case. We agree with the trial court.

While Stump argues that this is a matter of law that we should review de novo, we disagree. We review this alleged error for an abuse of discretion. "[A] trial court's decision on whether to instruct on a specific claim will be reviewed for abuse of discretion; the substantive content of the jury instructions will be reviewed de novo." *Sargent v. Shaffer*, 467 S.W.3d 198, 204 (Ky. 2015). Here, the trial court decided not to provide an instruction as to a specific claim. "The trial court may enjoy some discretionary leeway in deciding what instructions are authorized by the evidence, but the trial court has no discretion to give an instruction that misrepresents the applicable law." *Id.* at 204.

Stump argues that the jury should have been instructed regarding the fact that Sally had the examination performed months after the charged rape. Further, Stump states that he was "denied due process when exculpatory evidence of obvious value was wasted by the Commonwealth or its agents when the juvenile was not examined within the critical period of 96 hours to collect [sic] real evidence of DNA or injury or confirm their absence." He asserts this amounted to missing evidence, necessitating his tendered instruction.

Here, Sally testified that she told her best friend who encouraged her to tell a teacher. The charged rape occurred on April 14, and the record reflects that Sally did not report it to an adult for nine days—when she told her teacher and guidance counselor on April 23. In turn, the guidance counselor reported the abuse to the Child Protection Hot Line. Given this timeline, it would have

16

been impossible for the Commonwealth to conduct an examination within the critical 96-hour period following the rape.

The charged rape occurred on April 14, 2012. The state received notice of the allegation of this rape on April 23, 2012. The forensic interview occurred with the Child Advocacy Center on May 16, 2012, and the physical examination occurred on June 8, 2012. Stump contends that this delay in having the examination conducted was purposeful and favored the Commonwealth, spoiling evidence in which the exculpatory value was clear.

Just as the trial court, we are not persuaded by Stump's argument. It was impossible for the Commonwealth to collect or preserve the evidence within the 96 hours (4 days) demanded by Stump, because the rape was first reported to an adult (the victim's teacher) 9 days after it occurred. The forensic pelvic examination was conducted on June 8, which preserved any evidence that existed once the Commonwealth was notified of the crime. The trial court correctly ruled that the forensic pelvic examination and the failure to conduct the examination at an earlier date did not constitute missing evidence.

This Court held in *Ordway v. Commonwealth*:

> The missing evidence instruction should be given when material evidence within the exclusive possession and control of a party, or its agents or employees, was lost without explanation or is otherwise unaccountably missing, or was through bad faith, rendered unavailable for review by an opposing party. When appropriately given, the missing evidence instruction allows the jury, upon finding that the evidence was intentionally and in bad faith destroyed or concealed by the party possessing it, to infer that the evidence, if available, would be adverse to that party or favorable to his opponent. *University Medical Center, Inc. v. Beglin*, 375 S.W.3d 783, 792 (Ky.2012). When it is established that the evidence was lost due to mere negligence or inadvertence, which,

17

in effect, negates a finding of bad faith, the missing instruction should not be given. *Id.* at 791 (citing *Mann v. Taser Intern., Inc., 588 F.3d 1291, 1310* (11th Cir.2009)).

391 S.W.3d 762, 793 (Ky. 2013). Stump has the burden of proving that the Commonwealth acted in bad faith in its failure to procure the allegedly missing evidence. *Collins v. Commonwealth,* 951 S.W.2d 569, 573 (Ky. 1997). As stated above, the record does not reflect that Stump offered any evidence of the Commonwealth acting in bad faith in regard to the forensic pelvic examination.

Therefore, the trial court did not abuse its discretion by rejecting the requested jury instruction and did not deprive Stump of his due process rights.

## III. CONCLUSION

For the foregoing reasons, we affirm Stump's conviction and sentence.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Clarence Hervey Hixson
Louisville, KY

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Thomas Allen Van De Rostyne
Assistant Attorney General

18