RENDERED: MARCH 22, 2018
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2016-SC-000256-MR

DATE 4/12/18 Kim Redmon, DC

DEVERON SHIVELY            APPELLANT

ON APPEAL FROM JEFFERSON CIRCUIT COURT
V.     HONORABLE MITCH PERRY, JUDGE
NOS. 14-CR-000117 & 16-CR-000228

COMMONWEALTH OF KENTUCKY       APPELLEE

## OPINION OF THE COURT BY JUSTICE WRIGHT

### AFFIRMING

Appellant, Deveron Shively, was convicted by a Jefferson Circuit Court jury of criminal attempt to commit murder, possession of a handgun by a convicted felon, and tampering with physical evidence. For these crimes, the jury recommended sentences of twenty, seven, and three years, respectively, to be served concurrently. The trial court sentenced Appellant to twenty years' imprisonment in line with the jury's recommendation. Appellant now appeals to this Court as a matter of right. Ky. Const. § 110(2)(b). He asserts four claims of error in his appeal: (1) the trial court erred in denying his motion to suppress his statement to police, as that statement was coerced; (2) the trial court erred in refusing to allow certain cross-examination of the victim in order to show bias; (3) the trial court erred in denying Appellant's motion for a mistrial; and (4) the jury instructions on the possession of a handgun by a convicted felon charge deprived Appellant of his right to a unanimous verdict.

## I. BACKGROUND

Misty Shirley had been staying with her fiancé's daughters, Courtney and Carrie. Courtney's boyfriend, D.J., had been in an altercation with Misty's fiancé after he and two unidentified males entered Courtney and Carrie's apartment looking for pills. After the altercation, Misty decided to leave Courtney and Carrie's apartment and stay with other friends. D.J. called Misty numerous times, and Misty finally answered the phone the following day. D.J. put Appellant (his friend) on the phone, and Misty told Appellant she planned to walk to Walgreens.

When Misty exited her friends' apartment to walk to the drugstore, she saw Appellant emerge from the building next door, where D.J. was staying. Appellant offered to walk with Misty to Walgreens, and Misty agreed. The two did not go directly to the drugstore, but, instead, went to Appellant's mother's house, as Appellant indicated he needed to get his license. While on the street where Appellant's mother lived, Misty and Appellant were joined by two unidentified men. The four then continued their trek to Walgreens on the railroad tracks, heading toward a field at the back of the store.

When Misty started to step off the tracks and into the field, someone struck her in the back of the head with a gun, knocking her down. When she got up, Appellant faced her, with one of the unidentified men on either side. Misty testified that both Appellant and one of the unidentified men had guns. One of the men shot in Misty's direction and the three demanded money and drugs. They finally asked Misty to call someone to "set them up." When Misty

2

failed to contact anyone from whom the three could obtain drugs, the unidentified man with a gun said, "Kill the bitch," and Appellant shot her in the mouth. Misty was shot a second time in her back, with this bullet exiting through her side.

When Misty regained consciousness, she crawled across the field, and made her way inside Walgreens. When Misty reached the front of the store, she stood up in an effort to keep her grandmother, whom Misty was meeting at Walgreens, from being scared. Misty told the cashier she had been shot before collapsing in the floor.

The two detectives who spoke with Misty in the ambulance and at the hospital both testified she said the nickname of the individual who shot her was "Man." One of the two detectives knew Appellant's nickname was "Man," and gave Appellant's name to Detective Shannon Reccius, the lead detective on the case. Reccius put together a photographic lineup and presented it to Misty. Misty identified Appellant's photograph, and told Reccius Appellant was the shooter.[1] She told Reccius she had known Appellant for a few days and had been with him on the day of the shooting.

Appellant was arrested about three weeks after the shooting. Reccius testified Appellant signed a rights waiver and agreed to speak to the police.

---

[1] Misty also identified another of the pictures as being one of the men who was with Appellant. However, the individual in that photograph was in another county jail at the time of the shooting and could not have been with Appellant.

3

Appellant was indicted for criminal attempt to commit murder, first-degree robbery, and possession of a handgun by a convicted felon related to Misty's shooting.[2] Later, the Commonwealth obtained another indictment related to the shooting, adding first-degree assault (as a lesser-included offense of attempted murder) and tampering with physical evidence. The indictments were subsequently amended to add complicity. The handgun charge was severed from the other charges, and heard separately by the same jury. The jury found Appellant guilty of criminal attempt to commit murder, possession of a handgun by a convicted felon, and tampering with physical evidence. The trial court sentenced Appellant to serve twenty, seven, and three years' imprisonment, respectively, and ordered those sentences to run concurrently. This appeal followed.

## II. ANALYSIS

### A. Appellant's Statement to Police

Appellant first argues that his statement to police was involuntary, as it was induced and coerced. After his arrest, he was placed in an interview room at the police station. Before Appellant was interviewed by police, he asked a detective if he could speak to Officer Dale (the officer who had executed the warrant). Appellant provided Dale with the location of an individual wanted for another crime. Dale told Appellant he should "be straight" and "be honest"

---

[2] The indictment also included charges for an unrelated incident: possession of a handgun by a convicted felon, tampering with physical evidence, illegal possession of a controlled substance, and illegal use or possession of drug paraphernalia. These charges were later dismissed.

4

"when they come in here," and that Appellant should "start taking responsibility."

Appellant told Dale that he (Appellant) "was hurting his family" and was "scared for their safety." Dale responded that there were "people looking for you," and told Appellant the "big wigs" at the department had met about "what's being said between these groups and how they're putting hits on people, it's serious. Because usually that person ends up dead. So I was warning your parents, your mom, keep away from the windows, just be careful, cause the word's out." Appellant asked if the officers had determined who put the hit out, and Dale responded that they had not as of yet, but that they were working on it. Dale told Appellant the department "had cars there [at Appellant's mother's house] to protect you, to protect your mom, to protect that family." Dale reassured Appellant that he would "look out for [his] family." The two exchanged a fist bump before Dale left. Reccius, who had watched the interview from behind one-way glass, entered the interview room several minutes after Dale left Appellant alone.

Reccius read Appellant his Miranda rights and then interrogated him about Misty's shooting. Appellant spoke with her and did not demand an attorney. He gave Reccius a lengthy statement. Appellant objected to the admission of this statement at trial, arguing the initial "interrogation" by Dale coerced Appellant into giving the statement to Reccius.

We first note that the interaction between Dale and Appellant was not an interrogation, as framed by Appellant. "Interrogation has been defined to

5

include 'any words or actions on the part of police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect . . . focus[ing] primarily upon the perceptions of the suspect, rather than the intent of the police." *Smith v. Commonwealth*, 312 S.W.3d 353, 359 (Ky. 2010) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)). In *Miranda v. Arizona*, the Supreme Court of the United States said: "By custodial interrogation, we mean *questioning* initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. 436, 444 (1966) (emphasis added).

Appellant does not argue that he was entitled to his *Miranda* warnings before speaking with Dale. In fact, Appellant does not deny that he initiated the conversation. Dale did not question Appellant during their conversation about Misty's shooting. While he did encourage Appellant to be forthcoming and honest in the subsequent interrogation regarding the shooting, he did not hinge his protection of Appellant's family upon that honesty; much to the contrary, Dale said, "I'll look out for your family. I give you my word on that. . . . Nothing's gonna change from now on out, okay?" The trial court found that "[a]t no point did Officer Dale undertake to elicit 'an incriminating response from the suspect.'"

While Appellant did admit to being close to his mother's house on the day of the shooting, and did make some inconsistent statements during his statement to Reccius, he firmly denied any participation in Misty's shooting.

6

Appellant argues his statement amounted to an involuntary confession. He points out that the Supreme Court of the United States has held that a confession must be "the product of a rational intellect and a free will" in order to be properly admitted at trial. *Blackburn v. Alabama,* 361 U.S. 199, 208 (1960). That Court has recognized, "the general rule that the confession must be free and voluntary—that is, not produced by inducements engendering either hope or fear . . . ." *Bram v. United States,* 168 U.S. 532, 557-58 (1897).

This Court has held that "[t]o determine whether a confession is the result of coercion, one must look at the totality of the circumstances to assess whether police obtained evidence by overbearing the defendant's will through making credible threats." *Henson v. Commonwealth,* 20 S.W.3d 466, 469 (Ky. 1999). We went on to explain that "[t]he three criteria used to assess voluntariness are 1) whether the police activity was 'objectively coercive;' 2) whether the coercion overbore the will of the defendant; and 3) whether the defendant showed that the coercive police activity was the 'crucial motivating factor' behind the defendant's confession." *Id.* (quoting *Morgan v. Commonwealth,* 809 S.W.2d 704, 707 (Ky. 1991)).

In its written order denying Appellant's suppression motion, the trial court noted that Appellant asked to speak with Dale. Dale did not question Appellant about the crime, though he did encourage him to tell the truth. When Appellant stated he (Appellant) was harming his family, Dale confirmed that he had been protecting his mother's home and had spoken with her about the danger. Dale never threatened to remove police protection if Appellant did

not cooperate. The trial court found that Appellant's waiver was not obtained through coercive tactics. The trial court pointed out that the conversation never touched on the subject of Misty's shooting. That court also noted that Appellant was calm throughout his conversation with Dale. Therefore, the trial court found that Dale's conversation with Appellant "was not objectively coercive, and that [Appellant's] will was at no point overcome."

In reviewing a trial court's ruling on a motion to suppress, "[f]irst, we review the trial court's findings of fact under a clearly erroneous standard. Under this standard, the trial court's findings of fact will be conclusive if they are supported by substantial evidence. We then conduct a *de novo* review of the trial court's application of the law to the facts to determine whether its decision is correct as a matter of law." *Simpson v. Commonwealth*, 474 S.W.3d 544, 547 (Ky. 2015) (internal citations and quotation marks omitted).

Here, the trial court's findings of fact were supported by substantial evidence and were, thus, not clearly erroneous. The trial court also applied the proper law to those facts. We agree that Dale's actions were not objectively coercive, for the reasons identified by the trial court. Since the actions were not objectively coercive, our analysis need go no further. Therefore, we affirm the trial court's denial of Appellant's suppression motion.

**B. Misty's Criminal History**

Appellant argued at trial he should be allowed to introduce evidence that, at the time of her testimony, Misty had three pending charges and was on

8

probation. The defense theory was that Misty's pending charges and criminal history indicated that she had a motive to please the Commonwealth in hopes of favorable treatment in her pending cases. Appellant asked for Misty to be required to present avowal testimony and the trial court denied that motion. Appellant argues this denial violated his Sixth Amendment right to confront a witness in his trial.

This Court has stated: "An essential aspect of the Sixth Amendment Confrontation Clause is the right to cross-examine witnesses. *Douglas v. Alabama*, 380 U.S. 415, 418 . . . (1965). Additionally, 'the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.' *Davis v. Alaska*, 415 U.S. 308, 316 . . . (1974)." *Davenport v. Commonwealth*, 177 S.W.3d 763, 767 (Ky. 2005). However, the right to cross-examination is not unlimited. In *Delaware v. Van Arsdall*, the Supreme Court of the United States held "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." 475 U.S. 673, 679 (1986). This Court has quoted the First Circuit with approval in stating "'[s]o long as a reasonably complete picture of the witness' veracity, bias and motivation is developed, the judge enjoys power and discretion to set appropriate boundaries.'" *Commonwealth v. Maddox*, 955

S.W.2d 718, 721 (Ky. 1997), (quoting *U.S. v. Boylan,* 898 F.2d 230, 254 (1st Cir.1990)).

Appellant argues that he was not allowed to present a "reasonably complete picture" of Misty's veracity and motivation, and was prevented from presenting facts that would have shown a possible influence on Misty. Appellant argues that the fact that the jury heard that Misty was a convicted felon was not sufficient to safeguard his Sixth Amendment right to cross-examination. He insists the fact that Misty was facing current criminal charges in Jefferson County (where Appellant's trial also took place) "would have given her a natural motivation to please" the Commonwealth's Attorney. However, we agree with the Commonwealth that Appellant had no basis to demonstrate that Misty would gain the Commonwealth's favor through her testimony.

Misty was the victim in this case and her statements to police were made before any of the pending misdemeanor charges against her were brought. Misty's counsel in her pending cases assured the trial court that he had no knowledge of any deal between the Commonwealth and his client regarding her testimony in Appellant's trial. Furthermore, Misty's pending charges were all misdemeanors—and, therefore, would not be prosecuted by the Commonwealth's Attorney's office, which prosecuted Appellant's case.

This Court has held:

> The cross-examination must, at the threshold level, be appropriate, in that it must elicit testimony of such a nature as to reasonably call into question the witness's reliability. There must exist some practical connection between the evidence sought to be introduced and the alleged implication of bias. Specifically, the evidence should have some proclivity to demonstrate impropriety or

10

partiality beyond abject speculation. When it does not, the trial court is well within its purview in limiting evidence that does not support such an inference of bias.

*Holt v. Commonwealth,* 250 S.W.3d 647, 653 (Ky. 2008) (internal citations omitted.) Here, the evidence had no "proclivity to demonstrate impropriety or partiality beyond abject speculation." Therefore, we hold that the trial court did not abuse its discretion by denying Appellant's request to question Misty regarding potential bias brought about for her pending misdemeanor charges.

## C. Mistrial Motion

Appellant objected and moved for a mistrial due to Detective Reccius's testimony. Specifically, Reccius testified that Appellant told her he was not the perpetrator, but that he had seen two people walking across the field in question when he was at his mother's house on the day of the shooting. The Commonwealth asked Reccius "What else did [Appelant] say about seeing those two individuals?" Reccius responded:

> I think at one point in the conversation, it was two individuals that turned into three. Umm. I do remember him saying something about he heard two shots. And that at one point in the conversation, I believe he told one detective that was in the interview with me that he didn't see good far away. So, I was getting mixed signals on—I mean, clearly he was trying to hide something from me.

The Commonwealth argued that Reccius's comments were made in the context of her explanation of why she had conducted her investigation in a particular way and why she had moved from one subject to another in questioning Appellant. The trial court denied Appellant's motion for a mistrial and his

11

request for the jury to be admonished that a witness cannot "give an opinion about whether someone is being truthful or not."

We have held, "it is generally improper for a witness to characterize the testimony of another witness as 'lying' or otherwise." *Lanham v. Commonwealth*, 171 S.W.3d 14, 23 (Ky. 2005). In *Moss v. Commonwealth*, this Court quoted a decision from a sister state in reaching our holding: "A witness's opinion about the truth of the testimony of another witness is not permitted. Neither expert nor lay witnesses may testify that another witness or a defendant is lying or faking. That determination is within the exclusive province of the jury." 949 S.W.2d 579, 583 (Ky. 1997) (quoting *State v. James*, 557 A.2d 471, 473 (R.I.1989)). Here, the trial court stated that Reccius's comment that she was getting conflicting information from Appellant was not tantamount to saying Appellant was lying during the interrogation. We note that "hiding something" and "sending mixed signals" are not necessarily an indication that someone is "lying." A person can "hide something" by omission or by avoiding the subject in controversy. While Reccius's testimony may have indicated that Appellant was hiding things during the interrogation, she testified neither that "people who hide things are often lying," nor that she "thought Appellant was lying because he was hiding things from her." She was testifying in the context of her investigation about her investigatory techniques and why her questions shifted. Simply put, she did not characterize Appellant's statements as lies or opine that he was lying.

12

Appellant argues that "[t]his Court has consistently held that a witness may not express an opinion to the jury as to the defendant's guilt." However, even if Reccius's statement were a comment on Appellant's truthfulness, she never gave her opinion as to Appellant's guilt or innocence. Appellant also points us to *Ordway v. Commonwealth*, 391 S.W.3d 762, 776 (Ky. 2013), in which we held: "The determination of an individual's guilt or innocence must be based upon the evidence of the particular act in question; it cannot be extrapolated from an opinion, that his behavior after the event comports with some standardized perception of how the 'typical' suspect behaves." Again, this is simply inapplicable to the case at bar. Here, based upon Reccius's interview with Appellant, the detective testified that she was getting mixed signals and that Appellant was trying to hide something. She did not testify that Appellant behaved in a way that guilty people usually behave. Rather, she testified as to the manner in which Appellant's story changed and her belief that he was hiding something from her based upon those changes. She linked his behavior neither to his guilt, nor to the behavior typical of guilty parties.

This Court has held that "[a] mistrial is an extreme remedy and should be resorted to only when there appears in the record a manifest necessity for such an action or an urgent or real necessity." *Bray v. Commonwealth*, 177 S.W.3d 741, 752 (Ky. 2005) *overruled on other grounds by Padgett v. Commonwealth*, 312 S.W.3d 336 (Ky. 2010). "The occurrence complained of must be of such character and magnitude that a litigant will be denied a fair and impartial trial and the prejudicial effect can be removed in no other way."

13

*Gould v. Charlton Co.*, 929 S.W.2d 734, 738 (Ky. 1996). Furthermore, "[i]t is well established that the decision to grant a mistrial is within the trial court's discretion, and such a ruling will not be disturbed absent a showing of an abuse of that discretion." *Woodard v. Commonwealth*, 219 S.W.3d 723, 727 (Ky. 2007), *overruled on other grounds by Commonwealth v. Prater*, 324 S.W.3d 393 (Ky. 2010). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth. v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

Reccius's comments were made in the context of explaining her investigatory techniques and why she shifted her questioning of Appellant from one subject to another during the interview. She made no comment on her opinion as to Appellant's guilt or innocence during the course of her testimony. She merely explained what Appellant had told her, and stated that she was getting mixed signals from him and that he was hiding something. We cannot say that the trial court abused its discretion in denying Appellant's motion for the extreme remedy of a mistrial, as there was no manifest necessity to grant such a motion.

Appellant requested that the trial court admonish the jury that witnesses cannot "give an opinion about whether someone is being truthful or not." He now asserts that, at the very least, the trial court should have granted his request for an admonition. An admonition is not such an extreme remedy as a mistrial, and trial courts often admonish juries to disregard improper evidence in lieu of the harsher remedy of a mistrial. However, Reccius's comments—

14

while they may have come close—did not run afoul of our precedent. While she stated that Appellant was hiding something, that does not necessarily indicate that, in her opinion, he was lying. Again, a person can "hide something" by omission or by avoiding the subject. Her testimony regarding the course of the interrogation did not amount to her giving "an opinion about whether someone is being truthful or not." The members of this Court may have exercised their discretion differently and opted to grant the admonition to guard against jurors interpreting Reccius's testimony as a comment on Appellant's veracity. However, based on our precedent, we cannot say the trial court abused its discretion in denying Appellant's requested admonition.

Furthermore, even if we were to hold that the denial of the admonition amounted to an abuse of discretion, any such error would be harmless. The jury heard testimony regarding Appellant's statement—and the shifting story he gave during his interrogation. The victim identified Appellant in a photographic lineup as her shooter, and testified that she had known Appellant for a few days before the shooting. Reccius's statement in question was a fleeting part of her comprehensive testimony. Any error in the trial court failing to admonish the jury that witnesses cannot "give an opinion about whether someone is being truthful or not" would be harmless.

### D. Unanimous Verdict

Finally, Appellant argues that the jury's verdict finding him guilty of being a felon in possession of a handgun lacked unanimity. He admits this alleged error is unpreserved and requests palpable error review under RCr

15

10.26. Appellant's complaint arises from the fact that the instruction allowed the jury to find he was convicted of a felony on "1) December 15, 2011; AND/OR 2) September 24, 2013." He insists that our cases forbidding duplicitous instructions prohibit such an instruction, and, therefore, the jury's verdict on this charge must be overturned. Under Appellant's reasoning, some of the jurors may have believed he was convicted of a felony in 2011, while others may have believed the conviction came in 2013, and still others may have believed he was convicted on both dates. We find his argument unpersuasive.

This Court has stated:

> A duplicitous count, whether appearing in an indictment or jury instructions, presents multiple constitutional problems, including that the jury verdict is not unanimous, which is the issue raised in this case. "The courts have stated that two of the reasons for rejecting duplicitous indictments are that 'a general verdict of guilty does not disclose whether the jury found the defendant guilty of one crime or both' and that 'there is no way of knowing . . . whether the jury was unanimous with respect to either.'" [*Johnson v. United States*, 398 A.2d 354, 369–70 (D.C.1979) (quoting *United States v. Starks*, 515 F.2d 112, 116–17 (3d Cir.1975)).

*Johnson v. Commonwealth*, 405 S.W.3d 439, 454 (Ky. 2013). We went on to state, "[w]hen it is the jury instruction for a single count that covers two different instances of the crime, '[t]hese principles apply with equal force.'" *Id.* (quoting *Johnson*, 398 A.2d at 370). Furthermore, in *Kingrey v. Commonwealth*, we held: "A general jury verdict based on an instruction including two or more separate instances of a criminal offense violates the requirement of a unanimous verdict." 396 S.W.3d 824, 831 (Ky. 2013).

16

Appellant relies on this line of cases in arguing that the jury instruction in his case ran afoul of his right to a unanimous verdict. However, his attempted analogy between his case and those he cites misses the mark. *Johnson* and *Kingrey* are simply not applicable here. In *Johnson*, the jury could have convicted the defendant for criminal abuse based on evidence of two separate injuries suffered on different dates. 405 S.W.3d at 448. This Court held that, because the jury instructions did not differentiate between the separate acts of abuse, Johnson did not receive a unanimous verdict.

However, unlike the jury in *Johnson*, the jury here was not asked to determine if a particular *act* occurred—and given evidence of multiple occurrences of that act without differentiation in the jury instructions. Here, the jury was merely asked to determine Appellant's *status* as a convicted felon. He does not dispute that the prior felony convictions were valid, but only argues that the jurors may not have all agreed as to the date on which he was convicted. Unlike the *Johnson* and *Kingrey* line of cases, the jury was not asked to find that Appellant committed a particular act on a particular date. The instructions did not "include[e] two or more separate instances of a criminal offense." Here, the jury instructions specified the date Appellant allegedly possessed a handgun. After making the determination that Appellant had possessed the handgun, the jury was merely asked to determine his status as a convicted felon. The fact that he had more than one felony conviction does not create a unanimity problem. The jury merely had to determine his status

17

as a convicted felon. It was immaterial whether the jury believed he was convicted in 2011, 2013, or both.

This Court considered a similar issue in *Conrad v. Commonwealth*, 534 S.W.3d 779, 784 (Ky. 2017). While that case dealt with a persistent felony offender charge, the same reasoning applies. There, we stated:

> Conrad argues that the jury did not reach a unanimous verdict because his conviction could have been based on a litany of his prior convictions, and the instruction did not require that the jury specify which prior convictions formed the basis of their decision to convict him of being a first-degree persistent felony offender. But, combination instructions are not forbidden in the Commonwealth. And a "conviction of the same offense under either of two alternative theories does not deprive a defendant of his right to a unanimous verdict if there is evidence to support a conviction under either theory." [*Miller v. Com.*, 77 S.W.3d 566, 574 (Ky. 2002).] For Conrad, the jury could have concluded he was a persistent felony offender first-degree based on any two or all of the prior convictions given in the instruction.

We hold that Appellant's right to a unanimous verdict was not violated.

### III. CONCLUSION

For the reasons stated herein, we affirm the trial court.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Susan Jackson Balliet
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

David Bryan Abner
Assistant Attorney General