# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: FEBRUARY 14, 2019
NOT TO BE PUBLISHED

𝔖upreme 𝔔ourt of 𝔎entucky

2017-SC-000554-MR    DATE 3/7/19 Kim Redmon, DC

CHESTER KEITH COOGLE                                    APPELLANT

ON APPEAL FROM HARDIN CIRCUIT COURT
V.          HONORABLE KELLY M. EASTON, JUDGE
NO. 17-CR-00246

COMMONWEALTH OF KENTUCKY                                APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**AFFIRMING**

A Hardin Circuit jury convicted Chester Keith Coogle of third-degree assault, first-degree fleeing or evading, first-degree possession of a controlled substance, and use or possession of drug paraphernalia. The jury also found Coogle guilty of being a persistent felony offender ("PFO") in the second degree. The jury recommended an enhanced sentence of ten years on third-degree assault and first-degree fleeing or evading, along with sentences of three years on possession of a controlled substance and twelve months on possession or use of drug paraphernalia. The court ordered both ten-year sentences to run consecutively for a total sentence of twenty years to serve. Coogle was sentenced accordingly and he now appeals his conviction as a matter of right.

## I.    BACKGROUND

Sergeant Taylor Miller, with the Hardin County Sheriff's Office, was on patrol the evening of March 21, 2017 in a rural area of Hardin County near a small cemetery. Sgt. Miller saw two vehicles pull onto the road leading into the cemetery; they pulled up to the top of the road, in a small loop that leads back around so vehicles can leave on the same road leading into the cemetery. The vehicles then turned their headlights off. The cemetery was not lit and was fairly secluded and quiet. Sgt. Miller pulled into the same road and, before reaching the loop, stopped and turned on his emergency lights. Sgt. Miller noticed that one of the vehicles was fairly beaten up with a broken windshield. One of the drivers made a motion with his hand out the window to wave Sgt. Miller out of the way. Sgt. Miller did not move, however. The driver then floored his vehicle and drove around Sgt. Miller, back onto the main road, going up onto the grassy area to get around Sgt. Miller's vehicle. Sgt. Miller initiated a pursuit of the vehicle that had fled; he saw the driver as he passed and identified him later as the defendant, Coogle. Sgt. Miller activated his lights and sirens as he pursued Coogle's vehicle.

Coogle led Sgt. Miller down a path of country roads. The speed limit was 35 to 45 miles per hour; the road was sometimes curvy. Sgt. Miller estimated Coogle to be driving at 55 to 70 miles per hour during the pursuit. Coogle turned off the road into a property with a barn. Sgt. Miller knew there was no exit in the back of the property, so he stayed in front of the barn on the roadway as Coogle drove around from behind the barn. Sgt. Miller stated there

2

was a security light near the barn, so the area was more well-lit than the other areas during the pursuit. Sgt. Miller turned his vehicle around and watched as Coogle reemerged from behind the barn.

Coogle paused for a moment in the driveway. Sgt. Miller got out of his vehicle, drew his weapon, and yelled at Coogle to stop while making stopping gestures with his hand. Coogle paused and then turned his car towards Sgt. Miller and slammed on the gas, revving straight towards Sgt. Miller. Sgt. Miller ran for cover behind his vehicle; Coogle drove by closely. Sgt. Miller testified Coogle was close enough to his vehicle that he would not have been able to fit between the two vehicles. Coogle drove off down the road. Sgt. Miller discharged his gun at the retreating vehicle, worried that Coogle would turn around and attempt to drive over him again. After getting back into his vehicle, Sgt. Miller attempted to relocate Coogle but did not see his vehicle again at that time.

Eventually, officers, including Sgt. Miller, found the vehicle further away where Coogle had crashed into a tree on the side of the road. Officers searched the vehicle and found a couple of glass pipes, one of which had residue later identified as methamphetamine, a cut straw, and other small baggies. There was also a bullet hole in the trunk of the vehicle and the bullet was found inside the trunk of the car, identified as the bullet discharged by Sgt. Miller. Sgt. Miller also later discovered that Coogle had an active warrant for his arrest at the time of this incident and the ensuing pursuit, presumably leading to his flight after Sgt. Miller first approached his vehicle.

3

## II. ANALYSIS

### A. Double Jeopardy

Coogle was indicted on several charges. The jury was presented with instructions on the following crimes: (1) attempted murder with lesser included offenses of: attempted first-degree assault; third-degree assault; first-degree wanton endangerment; and second-degree wanton endangerment; (2) first-degree fleeing or evading with a lesser included offense of second-degree fleeing or evading; (3) first-degree possession of a controlled substance; and (4) use or possession of drug paraphernalia. Based on the instructions, the jury found Coogle guilty of: (1) third-degree assault; (2) first-degree fleeing or evading; (3) first-degree possession of a controlled substance; and (4) use or possession of drug paraphernalia. Coogle now alleges that, by instructing the jury on both third-degree assault and first-degree fleeing or evading, the trial court violated the constitutional proscription against double jeopardy.

Under Kentucky Revised Statute (KRS) 508.025:

(1) A person is guilty of assault in the third degree when the actor:
    a) Recklessly, with a deadly weapon or dangerous instrument, or intentionally causes or attempts to cause physical injury to:
        1. A state, county, city, or federal peace officer; ...

The jury instruction on third-degree assault allowed the jury to find guilt on that charge if:

A. That on [sic] this county on or about March 21, 2017, and before the finding of the Indictment herein, he attempted to cause physical injury to Sergeant Taylor Miller by driving his motor vehicle at him; AND
B. That Sergeant Taylor Miller was a police officer acting in his course of his official duties and the Defendant knew that he was acting in the course of said official duties.

4

KRS 520.095 states that:

(1) A person is guilty of fleeing or evading police in the first degree:
    a) When, while operating a motor vehicle with intent to elude or flee, the person knowingly or wantonly disobeys a direction to stop his or her motor vehicle, given by a person recognized to be a police officer, and ...
        4. By fleeing or eluding, the person is the cause, or creates substantial risk, of serious physical injury or death to any person or property ...

The instruction to the jury stated that Coogle could be found guilty of fleeing or evading, first degree, if the jury determined beyond a reasonable doubt:

A. That in this county on or about March 21, 2017, and before the finding of the Indictment herein, he operated a motor vehicle with the intent to flee or elude;
AND
B. That he knowingly or wantonly disobeyed a direction to stop his motor vehicle, which direction was given by a person whom he recognized to be a police officer;
AND
C. That his act of fleeing or eluding caused or created a substantial risk of serious physical injury or death to any person or serious injury to property.

Coogle argues that his constitutional right[1] to be free of double jeopardy was violated because the convictions required two conflicting states of mind.

Coogle concedes this issue is unpreserved and requests palpable error review under Rule of Criminal Procedure (RCr) 10.26. "To establish palpable error, [Coogle] must show 'the probability of a different result or error so fundamental

---

[1] *See* Ky. Const. § 13 ("No person shall, for the same offense, be twice put in jeopardy of his life or limb, nor shall any man's property be taken or applied to public use without the consent of his representatives, and without just compensation being previously made to him.") and U.S. Const. amend. V ("No person shall be subject for the same offence to be twice put in jeopardy of life or limb[.]").

as to threaten his entitlement to due process of law.'" *Huddleston v. Commonwealth,* 542 S.W.3d 237, 245 (Ky. 2018) (quoting *Brooks v. Commonwealth,* 217 S.W.3d 219, 225 (Ky. 2007) (citation omitted)). Appellate reviews focus "on whether 'the defect is so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process.'" *Huddleston,* 542 S.W.3d at 245 (quoting *Martin v. Commonwealth,* 207 S.W.3d 1, 5 (Ky. 2006)).

**Inconsistent Findings of Fact**

Coogle alleges that his convictions for both third-degree assault and first-degree fleeing or evading violate the double jeopardy ban codified in KRS 505.020(1)(b). The statute states that a defendant cannot be convicted of two offenses if "[i]nconsistent findings of fact are required to establish the commission of the offenses[.]" The gist of Coogle's argument is that, under the instructions, the jury could have convicted Coogle of first-degree fleeing or evading under the theory that he "wantonly" created a risk of injury while also convicting him of third-degree assault under the theory that he "intentionally" attempted to injure Sgt. Miller. Coogle argues that finding he acted both wantonly and intentionally violates KRS 505.020(1)(b).

In *Spicer v. Commonwealth,* we determined that the defendant's convictions for both attempted murder and first-degree assault violated this statutory, and constitutional, restraint. 442 S.W.3d 26, 30-31 (Ky. 2014). "[T]o convict a defendant of attempted murder, the jury must find that [the defendant] specifically intended during the attack to kill the victim. ... On the

6

other hand, and quite inconsistently, for the jury to convict the same defendant of first-degree assault for engaging in the same course of conduct, it must determine that his specific intent was not to kill, but merely to cause serious physical injury to the victim." *Id.* at 30 (quoting *Kiper v. Commonwealth*, 399 S.W.3d 736, 744-45 (Ky. 2012)). "These inconsistent and mutually exclusive findings of fact regarding [the defendant's] *mens rea* at the moment he fired the shots at [the victim] lead precisely to the same result that KRS 505.020(1)(b) prohibits." *Spicer*, 442 S.W.3d at 31 (quoting *Kiper*, 399 S.W.3d at 744-45).

In *Montgomery v. Commonwealth*, the Court of Appeals was faced with a similar question. 505 S.W.3d 274, 279-80 (Ky. App. 2016). In that case, there was an altercation between Montgomery and a police officer and Montgomery charged at the police officer with a baseball bat. *Id.* at 277. Montgomery was convicted of both second-degree wanton endangerment and third-degree assault based on this incident. *Id.* at 279. The Court of Appeals determined that:

> The jury could have found Montgomery's charge against [the officer] was intentional, resulting in assault, or it was wanton, resulting in wanton endangerment. Allowing both convictions, however, requires the jury to make inconsistent findings—that Montgomery was motivated by two different mental states for the same act against the same person.

*Id.* at 279-80.

The heart of Coogle's argument is that he could not have both wantonly and intentionally created a risk of injury to Sgt. Miller. However, he misreads the statute on first-degree fleeing or evading. The "knowingly or wantonly"

7

element refers to disobeying a police officer's directive. The statute states: "the person knowingly or wantonly disobeys a direction to stop his or her motor vehicle" and then lists several conditions, only one of which must be met to substantiate a first-degree fleeing or evading conviction. One of these conditions is that "the person is the cause, or creates substantial risk, of serious physical injury or death to any person or property[.]" This particular condition has no "wanton" element. Thus, there is a fatal flaw in Coogle's argument here. The instructions did not require that the risk of injury was both wanton and intentional. Instead, it allowed a conviction if Coogle wantonly disobeyed a direction from the police officer (first-degree fleeing or evading) but then also intentionally attempted to cause that same officer injury (third-degree assault).

In both *Spicer* and *Montgomery*, the juries found two mental states in the same actions by the defendant. In *Spicer*, the jury made findings that the defendant acted with intent to kill and with intent to only injure in the same attack. In *Montgomery*, the jury's findings resulted in the defendant having acted both wantonly and intentionally in attacking the police officer with a baseball bat. However, here, the wanton and intentional conduct were separate acts. Thus, the two mental states here were not referring to the same action. Even under the instruction, the jury could have determined Coogle wantonly disobeyed directives from Sgt. Miller but then intentionally attempted to cause Sgt. Miller injury. As such, inconsistent findings were not required for

8

both of Coogle's convictions. Coogle's right to be free of double jeopardy was not violated here.

## B. Unanimity

Coogle also argues that the jury instructions were erroneous and led to a non-unanimous verdict. Coogle argues that the Commonwealth's evidence proved two separate acts that could have been the basis for the fleeing or evading substantial risk element. First, Sgt. Miller provided testimony of the risk to his own life as Coogle fled the scene. Second, Sgt. Miller also testified that he witnessed Coogle almost running another vehicle off the road during the pursuit. Coogle states that because the Commonwealth's proof substantiated the conviction in two ways, but the jury instructions failed to specify the act, his right to a unanimous verdict was violated. Again, Coogle failed to preserve this error and requests palpable error review.

The actual instruction in question allowed the jury to convict if it determined that "[Coogle's] act of fleeing or eluding caused or created a substantial risk of serious physical injury or death to any person or serious injury to property." Coogle argues that this instruction led to the same kind of unanimity error that this Court described in *Martin v. Commonwealth*, 456 S.W.3d 1, 6 (Ky. 2015). A unanimity error "occurs when a jury instruction may be satisfied by multiple criminal acts by the defendant." *Brown v. Commonwealth*, 553 S.W.3d 826, 838 (Ky. 2018) (quoting *Martin*, 456 S.W.3d at 7).

9

However, when an instruction allows conviction under multiple theories, this is not necessarily the same kind of unanimity error as described in *Martin*. The Commonwealth argues that evidence at Coogle's trial proved several instances showing that Coogle created a serious risk of injury or death to other people, establishing multiple theories or means of committing the crime of fleeing or evading, first degree.

> [A] ... jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime ... But ... a disagreement about means ... would not matter so long as all 12 jurors unanimously concluded that the Government had proved the necessary related element[.]

*Brown*, 553 S.W.3d at 839 (quoting *Richardson v. United States*, 526 U.S. 813, 817-18 (1999)). Thus, if a jury could disagree on the "means" as opposed to an element of the crime, there is no unanimity violation.

In *Brown*, the Court determined the instruction allowing the jury to determine Brown had committed theft by stealing "money or jewelry or car" was not a unanimity error. *Brown*, 553 S.W.3d at 840. "The jury instructions forced the jury to unanimous agreement on the fact that *movable property* was taken, simply identifying three pieces of movable property that the jury could have found to be taken." *Id.* The jury agreed on the element of the crime: that movable property was taken. *Id.* Hence, no unanimity error occurred. *Id.*

In *Dunlap v. Commonwealth*, the Court examined "instructions [that] permit the jury to find aggravating circumstances based upon arson, burglary, or rape for the murder, and arson, burglary, rape, or murder for the

10

kidnapping charges, but it is unclear from the verdict forms whether the jury unanimously based its verdict upon the same aggravator or aggravators." 435 S.W.3d 537, 608 (Ky. 2013). The Court contrasted "jury instructions regarding multiple *instances* of the same crime" and "multiple *theories*, all of which support a conviction for the same offense and are therefore punishable by the same penalties." *Id.* at 609 (citations omitted). The Court held that the different possible aggravators were "all different 'theories' that support a conviction of the same 'offense,' *i.e.*, the aggravating circumstance." *Id.* This Court has previously emphasized that "a 'conviction of the same offense under either of two alternative theories does not deprive a defendant of his right to a unanimous verdict if there is evidence to support a conviction under either theory.'" *Shively v. Commonwealth*, 542 S.W.3d 255, 264 (Ky. 2018) (quoting *Conrad v. Commonwealth*, 534 S.W.3d 779, 784 (Ky. 2017) (quoting *Miller v. Commonwealth*, 77 S.W.3d 566, 574 (Ky. 2002))).

Here, the jury was permitted to determine within a series of incidents and events whether that conduct constituted a substantial risk of serious physical injury or death to any other person. The specific incidents listed by both Coogle and the Commonwealth are all "brute facts" and ways of establishing the means of committing the crime. The Commonwealth presented evidence of several acts that would qualify as being sufficient to create a substantial risk of danger: nearly running another person off the road, attempting to run over Sgt. Miller, driving at high speeds when there were other cars present on a curvy road, etc. All of these specific acts are *means* of

11

committing the crime. The element itself—the substantial risk—was unanimously determined to be present. As such, no unanimity violation occurred.

### C. Admissibility of Drone Video

Coogle next alleges error in the trial court's admitting a video showing the barn area where Sgt. Miller testified Coogle drove at him. The video was created after the crime occurred. Sgt. Miller returned to the scene with an aerial drone and recorded the route Coogle took around the barn, from Sgt. Miller's observation, that evening. The recording took place during the day, at various heights to see the scene in full. Coogle argued the video was inadmissible because it was (1) irrelevant; (2) unduly prejudicial; and (3) not substantially similar to the actual incident that took place with Coogle. "As with other types of evidence, the admissibility of experiment evidence is discretionary; the trial court's ruling will be disturbed on appeal only if that discretion is abused." *Rankin v. Commonwealth*, 327 S.W.3d 492, 499 (Ky. 2010) (citing *Cecil v. Commonwealth*, 297 S.W.3d 12, 20 (Ky. 2009) (citing *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999))).

The parties discussed the admissibility of the drone video before opening statements on the first day of trial.[2] Defense counsel objected, stating the footage was not an adequate representation of the events the night of the incident. She argued that there were "lush greens" and "lush lawns", affecting

---

[2] The parties addressed this drone video as well as another recording of a reenactment of the pursuit at the same time prior to trial.

the scene overall and the effect on the jury's interpretation of this pursuit; the recording was made four months after the March incident. She also clarified that this was a daytime video and the pursuit occurred at night. Defense counsel also argued that Sgt. Miller waited on the road while Coogle went around the barn so the "route" taken by the drone was based on Sgt. Miller's assumption of the route that Coogle took when he was out of Sgt. Miller's sight. The Commonwealth stated it sought to admit the video to show the scene and give context to where these events occurred.

The trial court, in a well-explained evaluation, held that the video was not a reenactment, it was simply a video of an area where the events occurred. It determined that there was no appreciable prejudice in showing a video rather than a photograph, there was clearly probative value to show the intent to flee from Coogle's route that evening, and the differences in foliage were not germane to the probative value. The trial court stated: "The point is, it shows a path... This danger of undue prejudice does not substantially outweigh that probative value." The trial court delved into the differences but found those differences did not impact the prejudicial or probative value of the drone evidence.

In *Rankin v. Commonwealth*, this Court adopted the rule from the federal courts that "experiment evidence is generally admissible if it bears upon a material issue and if the proponent establishes a sufficient similarity between the conditions of the experiment and those of the event in question." 327 S.W.3d at 498 (citations omitted). The Court explained:

13

If the experiment is offered as a simulation of actual events, then there must be substantial similarity between the experimental conditions and those which are the subject of the litigation. [However, if] the experiment is not meant to simulate what happened, but rather to demonstrate some general principle bearing on what could or what was likely to have happened, then the similarity between the experimental and the actual conditions need not be as strong. [No matter the purpose of the experiment,] the similarities must be such as to afford a fair comparison, and the court should be mindful of the significant risk of undue prejudice inherent in dramatic presentations offered to the jury as reenactments ... . ... If the experiment evidence is sufficiently similar to be probative and if its probative value is not outweighed by undue prejudice, then differences between the experiment and the event at issue go to the weight of the evidence, not its admissibility.

*Id.* at 498-99 (citations omitted).

"Generally speaking, the results of out-of-court experiments are generally admissible in evidence if such evidence tends to enlighten the jury and enable them to more intelligently consider the issues or if they provide evidence more satisfactory or reliable than oral testimony." *Stevens v. Commonwealth*, 462 S.W.2d 182, 185 (Ky. 1970) (citing *Lincoln Taxi Co. v. Rice*, 251 S.W.2d 867 (Ky. 1952)). "Such evidence is never admissible, however, unless the conditions under which the experiment was performed were substantially similar to the case under consideration." *Stevens*, 462 S.W.2d at 185-86 (citing *Ohio County Drug Co. v. Howard*, 256 S.W. 705 (Ky. 1923)).

Here, the probative value under Kentucky Rule of Evidence (KRE) 401 is clear. Describing the geographic area of this rural scene was difficult for any officer or witness; it was even harder to appreciate and picture as a listening jury member. The aerial footage was extremely helpful in assisting the jury to

14

understand all the testimony presented in the context of where the parties were on the evening described. This was not a reenactment video and was not purported to be. The drone video only attempted to show the scene itself, not what occurred between Coogle, Sgt. Miller, and anyone else on the road that evening. As such, the similarities do not need to be quite as substantial as a reenactment video.

We agree with the trial court that the differences here (foliage, season, and timing) are simply not germane to the probative value the video had for the jury. "[T]he experiment's obvious limitations can reasonably be deemed to go to its weight as evidence, not to its admissibility." *Rankin*, 327 S.W.3d at 499 (*see also United States v. Metzger*, 778 F.2d 1195, 1204 (6th Cir. 1985) (quoting *Szeliga v. Gen. Motors Corp.*, 728 F.2d 566, 567 (1st Cir. 1984)) ("Indeed, most '[d]issimilarities between experimental and actual conditions affect the weight of the evidence, not its admissibility.'"). The parties clarified to the jury that this was not a reenactment or live footage; they clarified that the events took place in the night rather than during daytime lighting. We cannot hold that the court abused its discretion in allowing this video. The probative value was high; the prejudicial value was low. The video showed nothing outlandish or offending; it merely showed the scene of the crime. Additionally, the video was similar enough to be probative and admissible under KRE 401, 403, and *Rankin*. The trial court did not err in admitting the video.

15

## D. Prosecutorial Misconduct

Coogle also alleges that the Commonwealth committed prosecutorial misconduct by asking him questions on cross-examination that implied he was a drug trafficker. Coogle testified on the second day of trial; he was the defense's only witness. The Commonwealth conducted an extensive cross-examination. In relevant part, the following exchange occurred between the prosecutor and Coogle.

CW:[3]  Now, you had a pipe that day, correct?
CC:[4]  Yes, sir.
CW:  And you also had baggies?
CC:  Yes, sir.
CW:  Okay. Some of those baggies were unused, is that correct?
CC:  Yes.
CW:  Okay. What do you use an unused baggie for?
CC:  You can use it for many things –
DC:[5]  Objection.
TJ:[6]  Mmm, I'm going to overrule that objection. Um I see where he's going with this. It's relevant to the intent to flee. Uh – why – so what was going on, what did he suspect he might be arrested for, so overruled. Go ahead.
CC:  What did I use them for? [Shrug] Uh puts meth in, put – uh, uh, they're used for all kinds of things. You can buy them at smoke shops.
CW:  Buy them at smoke shops?
CC:  Yes, sir.
CW:  And the scales – how about scales? Would you agree with me that an individual-typically a user doesn't carry scales, correct?
DC:  Objection, your honor, may we approach?
TJ:  No, you may not. Overruled. Go ahead.
CW:  Typically a user doesn't have scales, correct?
CC:  No, pretty much everybody I know owns a set of scales.

---

[3] Commonwealth
[4] Coogle
[5] Defense Counsel
[6] Trial judge

16

CW: Traffickers do too, correct?[7]
CC: I don't know.
CW: You don't know if a – you ever seen anybody weigh dope out?
CC: No.
CW: When you would buy your dope, would they weigh the dope out?
CC: No.
CW: They just give it to you?
CC: [No answer]

The Commonwealth asked further questions about who Coogle was with that evening but refrained from further references to trafficking. The remainder of the cross-examination focused on Coogle's intent that night and the danger he created to other people.

"Prosecutorial misconduct is 'a prosecutor's improper or illegal act involving an attempt to persuade the jury to wrongly convict a defendant or assess an unjustified punishment.'" *Dickerson v. Commonwealth*, 485 S.W.3d 310, 329 (Ky. 2016) (quoting *Noakes v. Commonwealth*, 354 S.W.3d 116, 121 (Ky. 2011) (citation omitted)). "It can take a variety of forms, including improper questioning and improper closing argument." *Dickerson*, 485 S.W.3d at 329 (citing *Duncan v. Commonwealth*, 322 S.W.3d 81, 87 (Ky. 2010)). "Although the Commonwealth is granted latitude in presenting its argument and raising objections, the prosecutor must nonetheless 'stay within the record and avoid abuse of defendants and their counsel.'" *Caudill v. Commonwealth*, 374 S.W.3d 301, 309 (Ky. 2012) (quoting *Whitaker v. Commonwealth*, 183 S.W.2d 18 (Ky. 1944)). "While it is the duty of the prosecutor to advance the

---

[7] We must note that the Commonwealth asserted in its brief that "the Commonwealth never used the word trafficker." This was clearly incorrect from review of the record.

17

Commonwealth's case with persuasiveness and force, he or she has a concomitant duty not to derogate from a fair and impartial criminal proceeding." *Caudill*, 374 S.W.3d at 309 (quoting *Commonwealth v. Mitchell*, 165 S.W.3d 129, 132-33 (Ky. 2005)).

This Court will "reverse for prosecutorial misconduct only if the misconduct is 'flagrant' *or* if each of the following three conditions is satisfied: (1) Proof of defendant's guilt is not overwhelming; (2) Defense counsel objected; and (3) The trial court failed to cure the error with a sufficient admonishment to the jury." *Caudill*, 374 S.W.3d at 312 (citing *Barnes v. Commonwealth*, 91 S.W.3d 564, 568 (Ky. 2002) (citing *United States v. Carroll*, 26 F.3d 1380, 1390 (6th Cir. 1994) and *United States v. Bess*, 593 F.2d 749, 757 (6th Cir. 1979))). The Court utilizes a "four-factor test to determine whether a prosecutor's improper comments constitute reversible flagrant misconduct." *Dickerson*, 485 S.W.3d at 329.

> (1) Whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused.

*Id.* (quoting *Mayo v. Commonwealth*, 322 S.W.3d 41, 55 (Ky. 2010) (quoting *Hannah v. Commonwealth*, 306 S.W.3d 509, 518 (Ky. 2010))). The "review must center on the essential fairness of the trial as a whole, with reversal being justified only if the prosecutor's misconduct was 'so improper, prejudicial, and egregious as to have undermined the overall fairness of the proceedings.'" *Dickerson*, 485 S.W.3d at 329 (quoting *Brewer v. Commonwealth*, 206 S.W.3d

18

343, 349 (Ky. 2006) (citing *Soto v. Commonwealth*, 139 S.W.3d 827, 873 (Ky. 2004))). Thus, the first issue is whether there was error in this line of questioning. If so, then we must consider whether that misconduct was "flagrant" or if the three-part test is satisfied to warrant reversal.

KRE 404(b) prohibits admission of "other crimes, wrongs, or acts ... to prove the character of a person in order to show action in conformity therewith." There are certain exceptions allowing such admission, but the rule is "exclusionary in nature" and "any exceptions to the general rule that evidence of prior bad acts is inadmissible should be 'closely watched and strictly enforced because of the dangerous quality and prejudicial consequences of this kind of evidence.'" *Clark v. Commonwealth*, 223 S.W.3d 90, 96 (Ky. 2007) (quoting *O'Bryan v. Commonwealth*, 634 S.W.2d 153, 156 (Ky. 1982)). "There are three inquiries, which together, provide a useful framework for determining the admissibility of other crimes evidence." *Bell v. Commonwealth*, 875 S.W.2d 882 (Ky. 1994) (citation omitted). A court should ask: (1) "Is the other crimes evidence relevant for some purpose other than to prove the criminal disposition of the accused?"; (2) "Is evidence of the uncharged crime sufficiently probative of its commission by the accused to warrant its introduction into evidence?"; and (3) "Does the potential for prejudice from the use of other crimes evidence substantially outweigh its probative value?" *Id.* at 889-90.

19

Although the trial court did not reference KRE 404 in its decision, it did address these concerns generally. In holding these questions permissible, the trial court stated:

> What [the prosecutor's] trying to do is to show uh if someone – is there a difference between the intent of someone who may have possession of meth and the difference in the intent of someone who believes they may be arrested for trafficking activity – would that weigh into their intent as to what they would do to get away? Would that weigh into their intent as to whether they would or would not attempt to strike an officer? That is relevant and probative evidence. So, if he is with someone and you know if he wants to show that there is evidence of trafficking then he can present that. It doesn't matter that he didn't charge him with it. It's relevant to the charges that are being tried right now.
>
> ...
>
> My point is that it is relevant, it is germane, it is particularly relevant to intent that night, which is the issue in the case. So, in terms of relevance, I will overrule any objection to that um –
>
> ...
>
> The probative – because intent is the issue we're all talking about and what he's thinking – you know, if this police officer gets me, he'll see I'm trying to get away, I had warrants, I had that, and if there was evidence of trafficking, that figures in to what was his intent that night. It is highly probative and is not unduly prejudicial because it's evidence of what happened that night. I think we already know about scales, we already know about baggies. So, I'm going to overrule the objection.

Had this issue been presented to the Court as a trial error, we would review its decision under an abuse of discretion standard. *See Anderson v. Commonwealth*, 231 S.W.3d 117, 119 (Ky. 2007). Were we to view the questions through this lens, we would be hard-pressed to find an abuse of the trial court's discretion here. The trial court examined the relevance of the evidence, its probative value, Coogle's defense (lack of intent), the main issues

20

presented to the jury, the potential prejudice resulting from the admission, and made a well-reasoned and sound decision. The decision is also firmly rooted within the case law of KRE 404(b).

Generally, it will be a unique and rare circumstance when evidence of uncharged trafficking crimes is admissible in a trial for unrelated crimes. In *Gordon v. Commonwealth*, this Court found "no legitimate need to say or imply that appellant was a drug dealer or that he was suspected by the police department of selling drugs in a particular vicinity." 916 S.W.2d 176, 179 (Ky. 1995). "Admission of this evidence branded appellant a drug dealer, violated his right to confront and cross-examine witnesses, denied his right to be tried only for the crime charged, and in general, bolstered the credibility of the police informant to the point where appellant's denial of criminal conduct would have appeared preposterous." *Id.* (*see also Graves v. Commonwealth*, 384 S.W.3d 144, 148-51 (Ky. 2012)). In contrast, however, we determined evidence of uncharged undercover drug buys was admissible "to demonstrate Appellant did in fact have knowledge of the drugs recovered from" his home. *Muncy v. Commonwealth*, 132 S.W.3d 845, 847 (Ky. 2004). It also proved his "intent to sell the drugs." *Id.* at 847-48. Recognizing that "it would typically be improper for the Commonwealth or a testifying witness to refer to the undercover buys" if the defendant is not on trial for those charges, this Court still determined that the circumstances of that case made the previous buys admissible. *Id.* at 847-48. Given Coogle's defense and the evidence presented at trial, we cannot say that the trial judge's decision here was necessarily an abuse of discretion. As

21

such, we cannot say that the Commonwealth committed prosecutorial misconduct. However, given the highly prejudicial nature of implying that a defendant is a drug trafficker, we would caution both prosecutors and trial courts to conduct a thorough examination and colloquy before admitting such evidence.

Even if these statements were admitted in error, we cannot hold that the questions rose to the level of reversible prosecutorial misconduct. "Reversal is only justified when the alleged prosecutorial misconduct is so serious as to render the trial fundamentally unfair." *Wheeler v. Commonwealth*, 121 S.W.3d 173, 189 (Ky. 2003) (citing *Summit v. Bordenkircher*, 608 F.2d 247 (6th Cir. 1979)). The Commonwealth's cross-examination of Coogle was extensive. But the reference to trafficking was isolated and fleeting. Coogle admitted to most of the crimes charged; he merely argued he never intended to harm Sgt. Miller that evening. Given these circumstances, these comments did not render Coogle's trial fundamentally unfair.

### E. Sentencing Exhibits

Pursuant to KRS 532.055(2)(a), the Commonwealth may introduce evidence at sentencing about a defendant's prior convictions. This Court has held that "[i]t is clear from the statute that the legislature intended for juries to be able to consider more information about a defendant's prior criminal history than just the identification of 'prior convictions.'" *Mullikan v. Commonwealth*, 341 S.W.3d 99, 108 (Ky. 2011). However, this Court has also clearly held that "the evidence of prior convictions is limited to conveying to the jury the

22

elements of the crimes previously committed." *Id.* at 109. Coogle alleges that the jury was inadvertently given access during sentencing to the certified copies of his prior convictions, which included in-depth and clearly inadmissible information about those convictions. The Commonwealth seems to concede that, had such information been given to the jury, it would have been error. However, the Commonwealth asserts that the only information given to the jury was a two-page summary of prior convictions and none of the certified records (which contained the details, citations, etc.) were ever given to the jury. They were, instead, supplied to the trial court to maintain in the record.

In reviewing the record, the prosecution handed the probation and parole officer a thick file of papers that he identified to the court as the certified records at the beginning of her testimony. In reviewing the convictions with the officer, the prosecutor identified the forms the witness was reviewing as Commonwealth's Exhibit 8.[8] The Commonwealth specifically asked whether the records were certified, and the officer said, yes. The Commonwealth moved to enter Commonwealth's Exhibit 8 into evidence and it was admitted without objection from the defense. After preparing jury instructions and awaiting the jury's return, the judge asked the Commonwealth, holding up what appeared

---

[8] Coogle's allegation of error here stems from this Exhibit in the record. Included with the trial exhibits is a packet of pages marked as Commonwealth's Exhibit 8 and includes the two-page summary *and* all the certified records. However, once again, we cannot tell whether this was attached before or after sentencing. From the video record, the parties and judge seem to treat these as two separate collections rather than one exhibit.

23

to be one or two pieces of paper, "So you intended – this is the exhibit?" The prosecutor responded, "I intended for the certified copies to go in the record for – for the record." The judge responded, "That's fine." The prosecutor made a comment that is not clearly audible, and the judge added, "Well without the extraneous information." After closing arguments, the judge told the jury that there was one additional exhibit, holding up what again appeared to be one or two pieces of paper, and handed it to the bailiff to take back during the jury's deliberations along with the original set of sentencing instructions.

From this Court's review of the record and sentencing proceedings, it is unclear what exactly was given to the jury during its sentencing deliberations. Such a lack of clarification creates a conundrum for this Court to address on appellate review. But, "[i]t is the responsibility of the appellant to present a complete record to this Court for review." *Graves v. Commonwealth*, 283 S.W.3d 252, 255 (Ky. App. 2009) (citing *Chestnut v. Commonwealth*, 250 S.W.3d 288, 303 (Ky. 2008)). "When the record is incomplete, we assume the omitted record supports the trial court's decision." *Graves*, 283 S.W.3d at 255 (citing *Commonwealth v. Thompson*, 697 S.W.3d 143, 145 (Ky. 1985) (citing *Commonwealth, Dept. of Highways v. Richardson*, 424 S.W.2d 601, 604 (Ky. 1968))). "This Court is not in the business of making baseless presumptions. It is incumbent upon Appellant to present the Court with a complete record for review." *Chestnut*, 250 S.W.3d at 303 (citations omitted). "When the record is incomplete, this Court must assume that the omitted record supports the trial court." *Id.* (citing *Thompson*, 697 S.W.2d at 145). "We will not engage in

gratuitous speculation as urged upon us by appellate counsel, based upon a silent record." *Chestnut*, 250 S.W.3d at 303 (citing *Thompson*, 697 S.W.2d at 145).

We note that Coogle has not asserted any proof from the record that the jury actually reviewed these certified records during its deliberations. It was quite possible for defense counsel to obtain affidavits from the jury members as to whether those documents were sent back during deliberations. We have no such evidence. The video record shows the trial judge handing documents to the bailiff but it is impossible to tell exactly what those documents are, although it appears to be fewer papers than all the certified records. Without more,[9] we cannot presume that the trial court erred. We are "not in the business of making baseless presumptions." *See Chestnut*, 250 S.W.3d at 303. "We will not engage in gratuitous speculation[.]" *See id.* Thus, we must hold that there is no reversible error as Coogle suggests.

## III. CONCLUSION

For the foregoing reasons, we hereby affirm, in all respects, the judgment and sentence of the Hardin Circuit Court.

Minton, C.J.; Hughes, Keller, Lambert, VanMeter and Wright, JJ., sitting. Minton, C.J.; Keller, Lambert, VanMeter and Wright, JJ., concur. Hughes, J., concurs in result only without opinion.

---

[9] We also note that relief is not necessarily foreclosed if Coogle determines that this error did, in fact, occur. Should counsel obtain affidavits as described or some further evidence to support the allegation that the jury reviewed these documents during deliberations, then Coogle may pursue relief under CR 60.02. Our decision today is made with the limited information presented to us.

25

COUNSEL FOR APPELLANT:

Brandon Neil Jewell
Assistant Public Advocate
Department of Public Advocacy


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Jesse Robbins
Assistant Attorney General